**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAFAELA ALDACO, | ) | |
| | ) | Case No.: 1-16-CV-05754 |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | The Honorable Joan H. Lefkow |
| | ) | |
| RENTGROW, INC. d/b/a Yardi Resident Screening, | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  STANDARD ...................................................................................................... 2

III. PLAINTIFF WAS NOT CONVICTED OF A CRIME ................................. 2

   A.   The YRS Report Contained Obsolete Data .......................................... 3

   1.   Under Illinois Law, a Disposition of Supervision is Not a Conviction. ..................... 3

   2.   For Purposes of the FCRA, a Disposition of Supervision is Not a Conviction and
        May Not Be Reported After Seven Years. ................................................. 6

IV.  YRS IS A NON- RESELLER CONSUMER REPORTING AGENCY .......... 8

V.   YRS FAILED TO CONDUCT A REASONABLE RE-INVESTIGATION AS
     REQUIRED UNDER §1681I ............................................................................ 9

VI.  YRS FAILED TO MAINTAIN AND FOLLOW REASONABLE PROCEDURES TO
     ASSURE MAXIMUM POSSIBLE ACCURACY. ......................................... 11

   A.   YRS's January 12, 2016, Report Included Inaccurate Information
        About Plaintiff. .................................................................................... 11

   B.   A Genuine Issue of Material Fact exists regarding the reasonableness of YRS's
        procedures. ............................................................................................ 12

   C.   YRS was not entitled to exclusively rely on the data it received from BGC. ........... 15

VII. THE INACCURATE REPORT WAS A SUBSTANTIAL FACTOR IN PLAINTIFF'S
     DENIAL OF HOUSING. .............................................................................. 17

   A.   A Genuine Issue of Material Fact Exists as to the Cause of Plaintiff's Damages. . 17

   B.   Genuine Issues of Material Fact Exists as to the Extent of Plaintiff's Damages.... 18

VIII. CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ......................................................... 2

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................ 2

*Cortez v. TransUnion, LLC*, 617 F.3d 688 (3d Cir. 2010) ........................................ 9, 10

*Cousin v. Trans Union Corp.,* 246 F.3d 359 (5th Cir. 2001) ....................................... 19

*Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311 (E.D. Pa. 2003) ............................ 12

*Curtis v. Trans Union*, Nos. 02-C-207, 02-C-208, 2002 WL 31748838 (N.D. Ill. Dec. 9, 2002) 12

*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997) ............................... 10, 12

*Dalton v. Capital Associated Industries, Inc.* 257 F.3d 409 (4th Cir. 2001) ............... 15

*Gohman v. Equifax Information Services, LLC*, 395 F. Supp. 822 (D. Minn. 2005) ................. 9

*Gorman v. Wolpoff & Abramson*, 584 F.3d 1147 (9th Cir. 2009) ............................... 10

*Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329 (9th Cir. 1995) ........................... passim

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) ...................................... 16

*Johnson v. MBNA America Bank, N.A.,* 357 F.3d 426 (4th Cir. 2004) ........................... 10

*Lawrence v. Trans Union, LLC*, 296 F. Supp. 2d 582 (E.D. Penn. 2003 ..................... 17

*Magin v. Monsanto Co.*, 420 F.3d 679 (7th Cir. 2005) .............................................. 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................... 2

*McNamara v. Hireright Solutions, Inc.*, No. 13 C 5215, 2014 WL 321790 (N.D. Ill. 2014) ..... 3, 7

*Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829 (8th Cir. 1976) ............................ 19

*Morris v. Equifax Information Services LLC*, 457 F.3d 460 (5th Cir. 2006) .................... 9

*Oses v. CoreLogic SafeRent, LLC*, 171 F. Supp. 3d 775 (N.D. Ill. 2016) .................... 3, 7

*Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996) .................................... 13, 17

*Poore v. Sterling Testing Systems, Inc.* 410 F. Supp. 2d 557 (E.D. Ken. 2006) .............. 8

*Reynolds v. Hartford Fin. Servs. Group*, 435 F.3d 1081 (9th Cir. 2006) ..................... 20

*Roybal v. Equifax*, 2008 WL 4532447 (E.D.Penn. 2008) ............................................................ 19

*Safeco Ins. Co. of Amer. v. Burr*, 551 U.S. 47 (2007) .................................................................. 19

*Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142 (4th Cir. 2008) ............................. 10, 20

*Shames-Yeakel v. Citizens Bank,* 677 F. Supp. 2d 994 (N.D. Ill. 2009) ...................................... 20

*Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993) .................................................................. 19

*U.S v. Jones*, 448 F.3d 958 (7th Cir. 2006)................................................................................ 6, 7

*United States v. Stowe*, 989 F.2d 261 (7th Cir.1993) ..................................................................... 7

**FEDERAL STATUTES**

15 U.S.C. § 1681 a(u) ................................................................................................................. 8, 9

15 U.S.C. § 1681(a)(1) .................................................................................................................. 11

15 U.S.C. § 1681a(g) ....................................................................................................................... 9

15 U.S.C. § 1681c ......................................................................................................................... 12

15 U.S.C. § 1681c(a)(2) ............................................................................................................... 2, 3

15 U.S.C. § 1681e(b) ................................................................................................................ 11, 13

15 U.S.C. § 1681i .................................................................................................................... 8, 9, 20

15 U.S.C. § 1681n ......................................................................................................................... 19

**ILLINOIS STATUTES**

20 ILCS 3930/7 ............................................................................................................................... 5

20 ILCS 2630/5.2 ............................................................................................................................ 5

720 ILCS 570/410 ........................................................................................................................... 7

730 ILCS 5/5-1-5 ............................................................................................................................ 3

730 ILCS 5/5-1-12 .......................................................................................................................... 4

730 ILCS 5/5-1-18 .......................................................................................................................... 8

730 ILCS 5/5-1-19 .......................................................................................................................... 4

730 ILCS 5/5-1-21 .......................................................................................................................... 4

730 ILCS 5/5-6-1 ................................................................................................ 4, 8

730 ILCS 5/5-6-3.1 ........................................................................................... 4, 6

**OTHER AUTHORITIES**

Afeef, J., Bostwick, L., Kim, S., & Reichert, J. (2012). *Policies and procedures of the Illinois criminal justice system.* Chicago, IL: Illinois Criminal Justice Information Authority .............. 5

United States Sentencing Guidelines, § 4A1.2(f) ......................................................... 6

## I.     **INTRODUCTION**

Rafaela Aldaco ("Plaintiff") is a single mom who was left homeless and depressed when Rentgrow, Inc. d/b/a YRS Resident Screening ("YRS") reported false information about her, causing her to lose out on an apartment and a fresh start. YRS prepared a Tenant Screening Report ("TSR") on January 12, 2016, which stated that Plaintiff had been convicted of battery. See Exhibit 5. Plaintiff was never convicted of battery, and as such, the charges brought against her were obsolete and not reportable under the Fair Credit Reporting Act ("FCRA"). (See Ex. 19.)

Plaintiff needed a fresh start. The Fellowship Housing program was a two-year program offering housing, monetary and counseling assistance to single mothers with children under the age of 18. After an application and interview process— that included a criminal records check— Plaintiff was accepted into the program.

On the day she was to move into her new apartment, the apartment complex required a new background check, and YRS's report caused her to be denied the apartment. (Statement of Additional Facts "SAF" 71.) She lost not only a home: she lost credit counseling, emotional counseling, tax refund matching, and debt payment matching. (SAF 72.) She lost her fresh start. She was devastated, homeless, and depressed. She learned that her background check revealed a conviction for battery from 1996; but this was false, as she had never been convicted of battery. (See Ex. 19.)

YRS concludes that because it did not run afoul of the ("FCRA") when reporting Plaintiff's criminal history, Plaintiff's damages were not caused by YRS. YRS then asserts that regardless of whether it violated the FCRA or caused Plaintiff's damages, that it is entitled to blindly rely on information derived from its vendor (ebackgroundchecks.com, "BGC") and that it maintained reasonable procedures in transmitting information it received from the BGC. Finally, YRS argues that its reinvestigation of the dispute complied with Section 1681i(f) of the FCRA.

As discussed herein, YRS is patently incorrect. In contrast to YRS's allegations, a disposition of supervision is not a conviction as a matter of law, and the evidence of record raises genuine issues of material fact—thus YRS is not entitled to summary judgment.

## II.  STANDARD

When a party seeks summary judgment, all facts and reasonable inferences must be construed in favor of the nonmoving party. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). Courts do not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter; they determine whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To overcome a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the case at bar, there exist genuine issues of material fact and YRS is not entitled to judgment as a matter of law. Summary judgment, therefore, is inappropriate.

## III.  PLAINTIFF WAS NOT CONVICTED OF A CRIME

Under §1681c(a)(5) of the FCRA, companies like YRS may not report criminal records—other than convictions of crimes—which antedate the report by more than seven years. This includes records of arrest. 15 U.S.C. § 1681c(a)(2). No special rule exists for other kinds of criminal records, including complaints, warrants, indictments, guilty pleas, parole, probation, and other criminal judgments or dispositions other than conviction—these events therefore fall within the general rule which prohibits reporting of adverse information more than seven years old.

YRS contends that an imposition of court supervision and community service constitutes a "conviction" for purposes of Illinois law and the FCRA, and that, as a result, it may report such information indefinitely under the FCRA. YRS relies wholly on two decisions from the Northern District of Illinois: *McNamara v. Hireright Solutions, Inc.*, No. 13 C 5215, 2014 WL 321790 (N.D. Ill. 2014), and *Oses v. CoreLogic SafeRent, LLC*, 171 F. Supp. 3d 775 (N.D. Ill. 2016). As discussed below, these cases are unpersuasive and distinguishable from the case at bar.

### A. The YRS Report Contained Obsolete Data

YRS misconstrues the nature of Plaintiff's claim. She does not argue that her successful completion of court supervision "negated the underlying conviction." YRS's Motion. at 4. As a matter of law, she was not convicted in the first instance. In Illinois, a criminal defendant who receives a disposition of supervision is unequivocally not convicted—and for purposes of the FCRA, this record may not be reported after seven years. 15 U.S.C. § 1681c(a)(5). The case law cited by YRS is inapposite given the narrow legal question presented on these facts. As a result, the YRS report containing adverse information regarding Plaintiff's supervision was obsolete and beyond the seven-year limitation contained in Section 1681c(a)(5) of the FCRA.

### 1. Under Illinois Law, a Disposition of Supervision is Not a Conviction.

Under Article I, Chapter 5 of the Illinois Unified Code of Corrections, conviction, judgment, and sentence are defined as follows:

> "Conviction" means *a judgment of conviction or sentence entered* upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury.
> 730 ILCS 5/5-1-5 (emphasis added).

> "Judgment" means an adjudication by the court that the defendant is guilty or not guilty, and if the adjudication is that the defendant is guilty, it includes the sentence pronounced by the court.
> 730 ILCS 5/5-1-12.

3

"Sentence" is the disposition imposed by the court on a convicted defendant.
730 ILCS 5/5-1-19.

In contrast, supervision is defined as follows:

"Supervision" means a disposition of conditional and revocable release without probationary supervision, but under such conditions and reporting requirements as are imposed by the court, *at the successful conclusion of which disposition the defendant is discharged and a judgment dismissing the charges is entered.*
730 ILCS 5/5-1-21. (emphasis added).

It is important to note that, upon a court electing to issue a disposition of supervision, a judgment of conviction or sentence is not entered against the criminal defendant. This is explained in Article 6, Sentences of Probation:

The court may, upon a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt, *defer further proceedings and the imposition of a sentence,* and enter an order for supervision of the defendant, if the defendant is not charged with [offenses not relevant here]. If the defendant is not barred from receiving an order for supervision as provided in this subsection, the court may enter an order for supervision after considering the circumstances of the offense, and the history, character and condition of the offender, if the court is of the opinion that:
(1) the offender is not likely to commit further crimes;
(2) the defendant and the public would be best served if the defendant were not to receive a criminal record; and
(3) in the best interests of justice an order of supervision is more appropriate than a sentence otherwise permitted under this Code.
730 ILCS 5/5-6-1 (emphasis added).

Importantly, deferring the proceedings without judgment is mandatory:

(d) The court *shall* defer entering any judgment on the charges until the conclusion of the supervision.
(e) At the conclusion of the period of supervision, if the court determines that the defendant has successfully complied with all of the conditions of supervision, the court shall discharge the defendant and enter a judgment dismissing the charges.
730 ILCS 5/5-6-3.1 (emphasis added).

Under the plain language of the statute, supervision cannot be tantamount to a conviction because the court stays the proceedings prior to entering a judgment or sentence. Where a defendant pleads guilty, the court may elect not to issue a judgment or impose a sentence but to

4

instead impose a disposition of supervision. And the statute specifically contemplates that upon

successful completion of supervision, the defendant will not *receive* a criminal record.

Similarly, the Criminal Identification Act states as follows:

> (C) "Conviction" means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury. *An order of supervision successfully completed by the petitioner is not a conviction.*
> 20 ILCS 2630/5.2 (emphasis added).

In 2012, the Illinois Criminal Justice Information Authority ("ICJIA")[1] published its *Policies*

*and Procedures of the Illinois Criminal Justice System,*[2] which provides a similar understanding

of how supervision relates to a conviction:

> Court supervision in misdemeanor cases either after a plea or after a trial, *suspends the judgment* in the case for a specific period of time. If the offender complies with all conditions set by the court, the offender *will be released without a conviction. This is considered a diversion program because it allows an offender to avoid a conviction on his or her record.* If the individual does not successfully complete the conditions of supervision, the case will proceed to sentencing and the conviction will remain on the individual's record. (emphasis added).

Most importantly, the Unified Code of Corrections provides a protection for individuals who

successfully complete their disposition of supervision, so that their records will not be considered

a conviction in line with the clear language outlined above:

> (f) Discharge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime.
> 730 ILCS 5/5-6-3.1

---

[1] ICJIA is a state entity created by statute with the powers and duties to, *inter alia,* "issue regulations, guidelines and procedures which ensure the privacy and security of criminal history record information consistent with State and federal laws," and to "act as the sole, official, criminal justice body in the State of Illinois to conduct annual and periodic audits of the procedures, policies, and practices of the State central repositories for criminal history record information to verify compliance with federal and state laws and regulations governing such information." 20 ILCS 3930/7.
[2] *Available at* http://www.icjia.state.il.us/publications/policies-and-procedures-of-the-illinois-criminal-justice-system, last accessed June 12, 2017.

As shown, Illinois law draws a bright-line distinction between supervision and conviction, and it is incorrect to equate the two.

### 2. For Purposes of the FCRA, a Disposition of Supervision is Not a Conviction and May Not Be Reported After Seven Years.

YRS cites *U.S v. Jones*, 448 F.3d 958 (7th Cir. 2006), for the notion that a conviction for purposes of a federal statute, such as the FCRA, must be defined by reference to federal law. YRS's Motion at 6. YRS overstates the holding of *Jones* in trying to shoehorn the FCRA into a case with a particularly narrow scope. *Jones* decided only whether prior dispositions of supervision count as a sentence—*not a conviction*—for purposes of the United States Sentencing Guidelines. *Id*. at 969-60. Contrary to YRS's argument, the court there did not equate a disposition of supervision with a formal conviction. *Id*.

The court in *Jones* had to determine whether a disposition of supervision should be counted as a prior adjudication of guilt for purposes of imposing a more stringent sentence. *Id*. The court implied that supervision is not a conviction and relied on the United States Sentencing Guidelines, which state:

> (f)     Diversionary Dispositions
> Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under §4A1.1(c) *even if a conviction is not formally entered*, except that diversion from juvenile court is not counted.
> U.S.S.G. § 4A1.2(f) (emphasis added).

The court in *Jones* found that the guilty plea made by the defendant in that case was enough to constitute an "adjudication of guilt," even though it was not formally a conviction: "it is the fact of that prior wrongdoing, not how the judicial disposition is labeled, which matters in calculating criminal history." *Jones* at 960-961 (citing *United States v. Stowe*, 989 F.2d 261, 263 (7th Cir.1993)).

In contrast with *Jones*, there is no federal definition of conviction within the FCRA or any analogous guidelines this Court can look to. As a result, this Court should define conviction by looking to the law of the forum in which she received her disposition. Under the FCRA, having formal convictions reported past seven years is one of the "disabilities imposed" by law protected under Illinois' Unified Code of Corrections.

Finally, YRS relies on *McNamara v. Hireright Solutions, Inc.*, No. 13 C 5215, 2014 WL 321790 (N.D. Ill. 2014), and *Oses v. CoreLogic SafeRent, LLC*, 171 F. Supp. 3d 775 (N.D. Ill. 2016). In *McNamara*, the plaintiff did not allege a violation of the FCRA's seven-year reporting period, but instead argued—unlike Plaintiff—that the CRA in that case inaccurately reported his supervision as "plead guilty-found guilty," because his supervision was not a finding of guilt. *McNamara* at *3. McNamara also alleged an inaccuracy based on the CRA's failure to report the subsequent dismissal of his case after he successfully completed supervision. *Id*.

In contrast, Plaintiff is claiming that YRS's report was inaccurate not because of a plea of guilty, but that it was displayed *at all* after the allowable 7-year period. This hinges on the fact that a disposition of supervision under Illinois law is not a formal conviction. That issue was not directly addressed in *McNamara*.

The *Oses* case is similarly distinguishable. There, a *pro se* plaintiff challenged a report showing a conviction where he was sentenced to first-offender probation under 720 ILCS 570/410, which provides that "[a] disposition of probation is considered to be a conviction for the purposes of imposing the conditions of probation and for appeal, however, discharge and dismissal under this Section is not a conviction for purposes of this Act or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." *Oses*, 171 F. Supp. 3d 779. Contrary to a disposition of supervision, probation is issued as a sentence that is imposed after a judgment is entered—which is the very definition of conviction under Illinois law. 730 ILCS 5/5-1-18; 730

7

ILCS 5/5-6-1(a). The *Oses* case does not address a disposition of supervision, but only deals with a sentence of probation. As such, the court did not opine whether a disposition of supervision—which crafted specifically to avoid "receiving a criminal record"—is tantamount to a conviction.

When Plaintiff successfully completed her court supervision, the court, on June 17, 1997 terminated the order of supervision and discharged the charge of battery. (Ex. 19.) Plaintiff avoided a conviction. Therefore, the charges brought against her were only reportable for seven years, or until June of 2004. Yardi's improper reporting of this outdated information caused Plaintiff to lose this coveted housing, forcing her into a state of homelessness.

## IV.     YRS IS A NON- RESELLER CONSUMER REPORTING AGENCY

The FCRA defines a reseller as a CRA that "assembles and merges information" from other CRAs" to provide to a third party *and* "does not maintain a database of the assembled or merged information from which new consumer reports are produced." 15 U.S.C. § 1681 a(u). *See Poore v. Sterling Testing Systems, Inc.* 410 F. Supp. 2d 557 (E.D. Ken. 2006) (a defendant was not a reseller because it assembled and evaluated information on a job candidate). YRS's practice goes beyond simply merging information from other CRAs. YRS stores the raw data it receives in its database, and YRS creates information contained on the TSR. Statement of Additional Facts "SAF" 49. *See Poore* at 569 (resellers do not create any consumer information).

YRS creates a consumer file when a TSR is requested on a consumer.[3] The criminal record information YRS requests from BGC is raw data, not a compiled report. (SAF 50,51). The raw data is then analyzed and placed onto a TSR. (*Id.*) YRS does not simply retransmit the information

---

3 A consumer may dispute anything contained in her consumer file, directly, or through a reseller. 15 U.S.C. § 1681i. A reseller, will not maintain a database of the information it obtains on a consumer, i.e. it will not maintain a consumer file. 15 U.S.C. § 1681a(u). A consumer file is defined as all of the information on a consumer recorded and retained by a CRA, irrespective of how it is stored. 15 U.S.C. § 1681a(g). YRS maintains consumer files, because it stores the data it receives from various sources, and so it cannot fit the definition of a reseller. *See Gohman v. Equifax Information Services, LLC*, 395 F. Supp. 822 (D. Minn. 2005); *Morris v. Equifax Information Services LLC*, 457 F.3d 460, 468 (5th Cir. 2006).

and data it receives from its vendors. It suppresses information not requested, information that is not reportable, or data that is questionable. (*Id.*) YRS then evaluates data to determine whether a potential tenant meets the property's requirements. Plaintiff's TSR states: "Individual Result: Does Not Meet Requirements." (Ex. 5.) That statement is YRS's assessment that the applicant does not meet the requirements of the management company. (SAF 52.) This statement is not data or information obtained from another source. This is information that is generated by YRS itself. These decisions are performed by YRS when it generates the reports for management companies.[4]

The data that is collected and data that is generated by YRS is maintained for seven years in the Customer Relationship Management (CRM) system. (SAF 50,51.) After the first report was generated, the data remained in the YRS database and was used to prepare subsequent reports. (SAF 53, Ex. 20.) YRS even stores the data it does not report on a consumer report. (Exhibit 35, SAF 54.) YRS also maintains a consumer file on the prospective tenants, and is therefore acting as a non-reseller CRA.

## V.   YRS FAILED TO CONDUCT A REASONABLE RE-INVESTIGATION AS REQUIRED UNDER §1681I.

Under the FCRA, YRS possesses an affirmative duty to "conduct a reasonable investigation" into disputes made by consumers regarding the information appearing on their credit report. *See* 15 U.S.C. § 1681i. Moreover, the investigation duties of companies like YRS require them to review *all* relevant information and to "delete" or otherwise correct any inaccurate information. *See* 15 U.S.C. § 1681i(a). For purposes of the investigation duties under FCRA section 1681i, a consumer must merely dispute the information that she *believes* or *alleges* to be inaccurate. *See* 15

---

[4] The fact that YRS prepares and sells an OFAC statement on prospective tenants also places YRS within the scope of non-reseller CRA, because the OFAC statement is generated and becomes part of the consumer's file. *See Cortez v. TransUnion, LLC*, 617 F.3d 688 (3d Cir. 2010). By generating an OFAC report in conjunction with obtaining raw data from BGC and issuing a statement that a Plaintiff did not meet the property's requirements to rent an apartment, YRS acted as a non-reseller CRA.

U.S.C. § 1681i; *Cushman v. Trans Union Corp.*, 115 F.3d 220, 223 (3d Cir. 1997). An entity that has investigation duties under FCRA section 1681i must conduct a qualitatively "reasonable investigation" into the dispute. *Cushman*, 115 F.3d 220. An investigation is a "detailed inquiry or systematic examination. Thus the plain meaning of 'investigation' clearly requires some degree of careful inquiry…" *Johnson v. MBNA America Bank, N.A.,* 357 F.3d 426, 430 (4th Cir. 2004) (internal citation omitted). This statutory investigation provision states that the investigating entity has a duty on its own to take action to "delete" the inaccurate item if it cannot be "verified" as accurate. 15 U.S.C. § 1681i(a).[5]

YRS failed to conduct a reasonable re-investigation of Plaintiff's dispute. After receiving Plaintiff's dispute, YRS claims to have made a determination (without supporting evidence) that the reporting error was not a result of its procedures, and so it forwarded Plaintiff's report to BGC. However, because YRS is a non-reseller CRA, it was obligated to conduct a reasonable investigation into Plaintiff's dispute. Plaintiff disputed that the conviction being reported on her background check belonged to her. Plaintiff did not recall being convicted of any crime. (SAF 55.)

YRS's policy and procedure with respect to conducting an investigation upon receiving a dispute consists of forwarding the dispute to a senior analyst who would check the courthouse website for available information, and to make attempts to call the courts. (SAF 56.) It is not common practice for the dispute investigators to make any other phone calls to investigate the dispute. (SAF 59.) After receiving Plaintiff's dispute, YRS's investigation consisted of making

---

[5] Various courts have consistently held that FCRA investigation cases, such as the one at bar, are not suitable for summary judgment because they require findings as to whether a particular investigation was *reasonable under the circumstances* and whether a particular defendant acted, or failed to act, *negligently or willfully* in non-compliance with the FCRA--determinations traditionally reserved for juries. *See Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1155, 1165 (9th Cir. 2009); *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148-50 (4th Cir. 2008); *Johnson v. MBNA*, 357 F.3d 426, 431-32 (4th Cir. 2004); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010) ("the reasonableness of [defendant's] procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.").

two un-answered phone calls to the Cook County Clerk's office, as memorialized in Exhibit 15. (Ex. 15, SAF 57.) YRS has sent individuals to a courthouse to review court dockets, but does not do this as a matter of practice. (SAF 58.) Other than these two steps, YRS awaits the result of their vendors' investigation, though YRS does not know how their vendors, specifically BGC, conducts their investigation. (SAF 57.) Yardi conducted no online court record investigation, no phone calls to Plaintiff, no conversations with anyone at the clerk's office, no review of court files. It relied, it says, on BGC's investigation, but, as discussed more fully *infra,* knows nothing of BGC investigation. There exists a genuine issue of material fact whether these two phone calls were a reasonable investigation under the FCRA.

## VI.  YRS FAILED TO MAINTAIN AND FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY.

FCRA section 1681e(b) requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the [agency's] report relates." 15 U.S.C. § 1681e(b). The Act provides for the same responsibility for non-reseller CRAs and reseller CRAs under Section 1681e(b). 15 U.S.C. § 1681e(b).

### A.  YRS's January 12, 2016, Report Included Inaccurate Information About Plaintiff.

Plaintiff's TSR was both inaccurate and misleading. Accuracy is at the heart of the FCRA. *See* 15 U.S.C. § 1681(a)(1) & (b) ("accuracy" identified as one of the major purposes of the act). FCRA section 1681e(b) specifically requires CRAs to assure "maximum possible accuracy" of the "information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). *See Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 1333 (9th Cir. 1995) (discussing *prime facie* section 1681e(b) claim). A notation on a consumer report may be considered inaccurate or incomplete for purposes of the FCRA if the way in which a CRA or furnisher reported it is misleading to potential creditors. S*ee Curtis v. Trans Union*, Nos. 02-C-

11

207, 02-C-208, 2002 WL 31748838, at *4 (N.D. Ill. Dec. 9, 2002) (finding that even factually correct information may be "inaccurate" where such information may be misleading to a party reviewing the consumer's credit report). One court within the Third Circuit put it this way: "a consumer report cannot be "accura[te]" under either section 1681e(b) or section 1681i if it contains information that is *legally incorrect." Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 318 (E.D. Pa. 2003) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997)) (emphasis added).

As discussed *supra,* YRS reported a criminal record pertaining to Plaintiff which was not a conviction. Because Plaintiff was not convicted of a crime, the criminal record should have been suppressed and not reported at all.[6] 15 U.S.C. § 1681c. Further, the criminal record which YRS reported was inaccurate because it showed Plaintiff was sentenced to sixty months of court supervision, when in fact she was only sentenced to six months. (Ex. 19.) The criminal record is also inaccurate because it failed to report the final disposition. (*Id.*) The record is missing a statement that the supervision was terminated and the charge was discharged. (*Id.).* But for this information to have been properly reported, YRS had to have had reasonable procedures in place to filter out this obsolete information. It did not.

### B. A Genuine Issue of Material Fact exists regarding the reasonableness of YRS's procedures.

The inaccuracies in Plaintiff's report were the result of systemic flaws in the way YRS creates its reports.[7] YRS fails to maintain reasonable procedures to assure maximum possible accuracy. Reasonable procedures under FCRA section 1681e(b) are those that "a reasonably prudent person

---

[6] Notably, the background check prepared through RealPage for Fellowship Housing on December 14, 2015 did not include this criminal record. There can be no better evidence of YRS's failure to block obsolete information, than another background check company refusing to place the same information on Plaintiff's report. SAF 74.

[7] Incredibly, YRS suggests Plaintiff had a duty to provide it with notice of the inaccuracy under Section 1681e(b). See Motion, p.10. Neither the statute, nor any court interpreting this section has agreed with this position. If it were accurate, it would render this section meaningless.

would undertake under the circumstances." *Philbin v. Trans Union Corp*., 101 F.3d 957, 963 (3d Cir. 1996). "Judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Id.* Whether a CRA's procedures to assure accuracy were reasonable is usually a question of fact for a jury. *See Guimond*, 45 F.3d at 1333 (reasonableness of CRA's procedures "will be a jury question in the overwhelming majority of cases.").

YRS espouses its two part filtering system as evidence that it maintains reasonable procedures. Step one consists of an automatic filtering process which, through an algorithm, eliminates false positives (where a conviction likely does not belong to the applicant). (SUF 18.) Step two employs the use of a live person (public records analyst) to review the criminal records to ensure the records are accurate and up-to-date, and to evaluate the records to determine if a prospective tenant meets the properties requirements. (SAF 60.) This two-step filtering process takes merely three minutes. (*Id.*).

Public records analysts are neither trained by law enforcement, criminal attorneys or judges (SAF 61) and though YRS knows that criminal laws vary from state to state, it does not train the analysts on the criminal codes of different states. (SAF 62.) Though it is possible for public records analysts to actually review the court dockets, the only time that happens is when the management company requests a copy of the court docket, even in the State of Illinois. (SAF 63.)

YRS has been familiar with deferred disposition for at least ten years. (SAF 64.) YRS is also aware that there are several different types of dispositions which vary from state to state, but was not aware that Illinois had a deferred disposition statute. (SAF 64, 65.) YRS keeps an exhaustive list of dispositions its analysts have encountered to refer to when they are unsure of a term used in a criminal record. (SAF 64.) To that end, Mr. Hennesey testified that YRS "We document all of the ones that we have encountered and confirm what they are and if there are new ones that are

13

encountered, they are looked up, and documented for what they are." *Id.* However, Yardi could not confirm that the individuals who are responsible for manually filtering criminal records to "assure maximum possible accuracy" are trained on how to detect deferred dispositions, nor whether they knew that Illinois had such a statute. (SAF 65.)

And when asked about whether deferred depositions are considered convictions at YRS, YRS responded that it would depend on what the criminal record showed. (SAF 66.) When looking at Plaintiff's criminal record, YRS was not aware that the final disposition of her criminal case showed the supervision was terminated and the charges discharged. (*Id.*). And most tellingly, Mr. Hennessey, the corporate representative testifying for YRS could not state what the company's position was in a situation, as here, where the final disposition was that the charges were discharged. (*Id.*).

It is clear that YRS neither understood Illinois criminal procedure, nor took the time to avail itself of the significance of deferred dispositions in the State of Illinois as the disposition list does not contain any reference to the typical deferred disposition in the State of Illinois; it contains no reference to any of the terms found on Plaintiff's criminal record. (SAF 67.) This is evidence that YRS failed to maintain and follow reasonable procedures to assure maximum possible accuracy in reporting Plaintiff's deferred disposition in the State of Illinois. YRS, in fact, has no procedure in place whatsoever to filter out State of Illinois deferred disposition, though it has the capability to do so, at the very least, when the public records analysts manually review the criminal records.

Moreover, this information was "misleading in such a way and to such an extent that it can be expected to [have an] adverse [ ]" effect. *See, e.g., Dalton v. Capital Associated Industries, Inc.* 257 F.3d 409, 415 (4th Cir. 2001). YRS failed to note the correct amount of time Plaintiff was ordered to be under court supervision, nor final disposition of Plaintiff's criminal matter. The final disposition was "Supervision Term/Discharged". (Ex. 21.) Thus it simply cannot be said that, as a

14

matter of law, Plaintiff will be unable show an inaccuracy in this case and that YRS maintained reasonable procedures.

### C. YRS was not entitled to exclusively rely on the data it received from BGC.

Notwithstanding YRS's refusal to educate itself on the different dispositions in the State of Illinois, YRS was also on notice that BGC was not a reliable source of data. YRS was warned not to rely on the data it received from BGC. The contract between BGC and YRS, entered into on October 23, 2006, specifically states that the BGC "system database and website *have not been designed or developed to meet FCRA requirements." (*SAF 68, Ex. 28.) BGC even disclaims any warranties of fitness of its database for FCRA purposes. (*Id.*) In Article 4 of the Contract, in bold, capital letters BGC disclaims the accuracy of its data. Since 2006, nearly ten years before Plaintiff's criminal records were inaccurately reported on her background check, YRS was on notice that "**BGC DOES NOT WARRANT THE ACCURACY OR THE CORRECTNESS OF THE DATABASE OR THE INFORMATION CONTAINED THEREIN"** (*Id.*) BGC puts YRS on notice that its information may not be correct. Even the Cook County clerk's office recommends looking at the official record to assure accuracy. (SAF 69.) With each disclaimer from BGC in its contract, and the disclaimers it provides on the background check reports, and even the disclaimers from the Cook County court system YRS appears to take the ostrich defense, puts its head in the sand and claims its procedures are reasonable despite the fact that everyone in the chain of criminal data says "we can't be sure this data is right." This is an unacceptable practice for a company which has the power to make a person homeless.[8]

---

[8] YRS's own statistics demonstrate that it does not maintain reasonable procedures to assure maximum possible accuracy. In January 2016, YRS performed 130,901 criminal screenings for background checks. SAF 68. After the automatic filtering process suppresses certain criminal records, 10,137 criminal screenings showed some kind of criminal record. *Id.* 235 disputes were initiated with YRS based on the results of the background check, and 201 of those disputes (8 showed the criminal record was inaccurate, an error rate of over 85%. *Id.* There is no record or information on why there were no disputes on the other criminal records. *Id.* Though YRS argues its accuracy rate was 98.02%, in deposition YRS testified that

Attached to YRS's own Motion is a complaint and consent decree against the very source it claims to be presumptive reliable: BGC. (Ex. 23 and 24.) In that consent order, dated October 29, 2015, the Consumer Financial Protection Bureau, having reviewed the procedures employed by BGC in reporting public record information, found that it failed to employ reasonable procedures to assure maximum possible accuracy, and failed to exclude non-reportable information from employment reports. (Ex. 23 P. 1.) The CFPB found that BGC has failed to meet FCRA requirements since at least July 21, 2011 through December of 2014. Most significantly, the consent decree states BGC failed to conduct sufficient testing to determine the accuracy of the data it provides. (See Ex. 23, ¶17-19, 23.) This conduct does not a reliable source make.

YRS pins much of its hope on the Seventh Circuit's decision in *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994). That hope is misplaced. In *Henson*, a creditor sought a judgment against "Jeff" Henson, not the plaintiff in the FCRA case "Greg" Henson. *Id.* at 282-83. Nevertheless, the underlying court's official "Judgment Docket listed Jeff and Greg together and erroneously indicated that the money judgment was entered against both of them in the amount of $4,075.54." *Id.* at 283. In fact, other official court records stated that "Defendant, Gary Henson, has no ownership or interest [in the car to be reposed from Jeff] and Plaintiff may sell the automobile free and clear of any claim or right of Greg Henson." *Id.* at 282.

Unlike the case at bar, the FCRA plaintiff in *Henson* had a public record entry on the underlying court's official judgment docket *actually against him --* although the clerk of the court made an error in docketing that entry. The CRA copied that underlying docket entry (not simply the error of another CRA, like in the case at bar) and put it on Plaintiff Greg Henson's consumer

---

that number does not reflect reports accurately reported, it is simply that no dispute were lodged with YRS. *Id.*

report, but the Seventh Circuit nevertheless found that the judgment entry on Greg's report to be "inaccurate." *Id.* at 285. This holding is of no help to YRS here.

## VII. THE INACCURATE REPORT WAS A SUBSTANTIAL FACTOR IN PLAINTIFF'S DENIAL OF HOUSING.

### A. A Genuine Issue of Material Fact Exists as to the Cause of Plaintiff's Damages.

The issue of causation is hotly contested and replete with genuine issues of material fact. Notably absent from YRS's Motion is any mention of *Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329 (9th Cir. 1995). There, the Appellate Court in reversing the district court's grant of summary judgment on the issue of causation where there was evidence to support the plaintiff's theory of liability noted the "issue of causation should have been left for a fact finder to determine." *Id.* at 1333. Importantly, Plaintiff need not present evidence of a denial of credit to recover under the FCRA. *Guimond*, 45 F3d at 1333. YRS is mistaken, therefore, in suggesting that Plaintiff cannot raise a genuine issue of material fact as to causation. Other districts have also confirmed that a plaintiff need not come forward with a mountain of evidence on causation in order to proceed to the jury with his or her damages claim. *Lawrence v. Trans Union, LLC,* 296 F. Supp. 2d. 582, 588-89 (E.D. Penn. 2003) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3rd Cir. 1996)).

The FCRA causation standard has mostly been discussed by the courts with reference to lost credit opportunities, but what is evident from that discussion is that the causation standard is not high for consumer-plaintiffs. A seminal case on FRCA causation comes from the Third Circuit in a mixed file case, *Philbin*, which held it is a jury issue whether an inaccuracy was a "substantial factor" and that a consumer-plaintiff is minimally required to present some evidence of a credit inaccuracy and then some evidence of applying for and not obtaining credit. *Philbin v. Trans Union* 101 F.3d at 966-70. The Third Circuit found that it was for the trier of fact to decide whether the

denial was *caused* by Trans Union's inaccurate credit reports by necessary implication, not a legal determination that could be made at summary judgment. *Id.*

In the case at bar, Plaintiff has satisfied the FCRA's causation standard. She has come forward with evidence that YRS inaccurately reported the conviction on her TSR. Then, YRS failed to do an investigation and continued to report the conviction inaccurately on her report. YRS states in its Memorandum "Plaintiff's alleged damages flow from the denial of her rental application, not from any omission of a discharge/dismissal notation in Plaintiff's report". (Dkt. 36, page 8). But this ignores the practical reality: the rental application was denied *because* the TSR revealed an obsolete criminal record, and because YRS reported to the management company that Plaintiff did not meet the property's requirements. (See Ex. 5.) The TSR was the very last step in moving in to her new apartment. In fact, January 12, 2016 was her move-in date and she went to the management office to pick up the keys to move her personal belongings in. (SAF 71.) The TSR The Reserve purchased was the reason she was told she would not get the apartment. (*Id.)* Without housing, Plaintiff would not qualify for the FHC program. Failing her background check was devastating to Plaintiff, and the inaccurate report caused her damage.

### B. Genuine Issues of Material Fact Exists as to the Extent of Plaintiff's Damages.

Plaintiff suffered economic loss and emotional distress as a result YRS's negligent violations of the act. YRS briefly addresses damages for in footnote 5 of its Motion. Plaintiff is entitled to actual damages as well as statutory and punitive damages for its willful violation. Economic damages as well as emotional and mental distress, anxiety, humiliation and embarrassment as well as damage to credit reputation are all recognized as "actual damages" under the FCRA. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d at 1333, *Johnson v. MBNA,* 357 F.3d 426 (jury awarded over $90,000 to plaintiff for emotional distress and damage to reputation); *Stevenson v. TRW Inc.*, 987 F.2d 288, 296 (5th Cir. 1993); *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834-35 (8th

Cir. 1976); *Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001) (emotional distress damages may be awarded even if there are no out-of-pocket losses); *see generally*, *Roybal v. Equifax*, 2008 WL 4532447 (E.D.Penn. 2008). These cases also demonstrate that a consumer-plaintiff may recover such damages without the need for medical testimony. *Id.*

Plaintiff claims economic damages for her loss of Fellowship Housing Opportunities in the amount of $43,350.45. (SAF 72.) Plaintiff also suffered from emotional distress, which manifested in physical ailments, and this testimony was corroborated by various witnesses. (SAF 73, 74, 75.)

Plaintiff is entitled to statutory and punitive damages for YRS's willful violations of the FCRA. Under the evidence that Plaintiff has proffered in this case a reasonable jury could properly find not only that YRS violated the FCRA, but that it did so *willfully*. A willful violation allows a jury to award punitive damages. *See* 15 U.S.C. § 1681n. In its only decision on the subject, the U.S. Supreme Court held that Congress intended the term "willfully" within the FCRA to have its "common law usage." *See Safeco Ins. Co. of Amer. v. Burr*, 551 U.S. 47, 57 (2007). The High Court said that the common law "treated actions in 'reckless disregard' of the law as 'willful' violations." *Id.* It thus concluded that "[t]he standard civil usage thus counsels reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations." *Id.*

In applying the reckless disregard standard to the facts of FCRA cases, both before and after *Safeco*, many courts have found that, even though recklessness is an objective *legal* standard, the question of whether a particular set of actions or omissions shows a "reckless disregard" of consumer rights is usually a fact-bound inquiry and thus presents a question for the jury. *See*, *e.g.*, *Reynolds v. Hartford Fin. Servs. Group*, 435 F.3d 1081, 1097-99 (9th Cir. 2006) (discussing meaning of "willfully" with CRA) (reversed by *Safeco* on other grounds, but affirmed by *Safeco* as to "reckless disregard" willfulness standard); *Saunders v. Branch Banking & Trust Co.*, 526

F.3d 142, 151-52 (4th Cir. 2008); *Shames-Yeakel v. Citizens Bank,* 677 F. Supp. 2d 994 (N.D. Ill. 2009).

Here, like in most FCRA cases, the issue of willfulness is for the jury. *See Guimond*, 45 F.3d at 1333-36. Plaintiff has proffered a detailed record of the climate at YRS, which employs a head in the sand policy of not reasonably investigating disputes, ignoring clear differences in the definitions of deferred dispositions and a corporate policy to ignore state law. (SAF 64-67.) YRS has demonstrated its reckless disregard for the rights of consumers.

## VIII.  CONCLUSION

Plaintiff has proven that she was never convicted of a crime. She demonstrated that a genuine issue of material fact exists as to whether YRS is a non-reseller CRA subject to the requirements of conducting a reasonable reinvestigation pursuant to 15 U.S.C. § 1681i. Plaintiff has also demonstrated that a genuine issue of material fact exists as to whether YRS maintained reasonable procedures to assure maximum possible accuracy in the report it generated for Plaintiff. As a result of the inaccuracies, Plaintiff was denied housing, suffered economic loss and significant emotional distress. YRS's Motion for Summary Judgment must be denied.

DATED: June 22, 2017

**ZAMPARO LAW GROUP, P.C.**

By:  */s/ Stephanie R. Tatar*
Stephanie R (Gast) Tatar, Esq.
Roger Zamparo, Jr.
Steven J. Uhrich
2300 Barrington Road, Suite 140
Hoffman Estates, IL 60169
(224) 875-3202 (t)
(312) 276-4950 (f)
stephanie@zamparolaw.com
roger@zamparolaw.com
steven@zamparolaw.com

20