**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAFAELA ALDACO, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-05754 |
| | ) | |
| v. | ) | The Honorable Joan H. Lefkow |
| | ) | |
| RENTGROW, INC. d/b/a Yardi Resident | ) | |
| Screening, | ) | **REDACTED PURSUANT TO LOCAL** |
| | ) | **RULE 26.2** |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.        McNamara and Oses Are Functionally Identical to this Case and Establish that Plaintiff's Prior Guilty Plea/Finding Was Properly Reported by YRS............................................ 3

II.        Plaintiff's Section 1681e(b) Claim Fails Because None of the Alleged Inaccuracies in Her TSR Caused Her Rental Application to Be Denied and, In any Event, YRS Was Permitted to Rely on BGC ............................................................................................. 7

III.        YRS Is a Reseller, and Fully Complied with Its Reinvestigation Obligations Under Any Standard ........................................................................................................ 12

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Benson v. Trans Union, LLC*,
  387 F. Supp. 2d 834 (N.D. Ill. 2005) ......................................................................11

*Crabill v. Trans Union, L.L.C.*,
  259 F.3d 662 (7th Cir. 2001) ..................................................................................9

*Darrin v. Bank of Am., N.A.*,
  No. 2:12-cv-00228-MCE-KJN, 2014 WL 1922819 (E.D. Cal. May 14, 2014) ..................10

*Guimond v. Trans Union Credit Information Co.*,
  45 F.3d 1329 (9th Cir. 1995). (Opp. at 17-18.)..................................................8, 9

*Henson v. CSC Credit Servs.*,
  29 F.3d 280 (7th Cir. 1994) ....................................................................................10

*In re Gulevsky*,
  362 F.3d 961 (7th Cir. 2004) ..................................................................................4

*McNamara v. Hireright Solutions, Inc.*,
  No. 13 C 5215, 2014 WL 321790 (N.D. Ill. Jan. 29, 2014) ........................... passim

*Oses v. CoreLogic SafeRent, LLC*,
  171 F. Supp. 3d 775, 778-79 (N.D. Ill. 2016)................................................... passim

*Poore v. Sterling Testing Systems, Inc.*,
  410 F. Supp. 2d 557 (E.D. Ky. 2006) ...........................................................12, 13

*Ruffin-Thompkins v. Experian Info. Solutions, Inc.*,
  422 F.3d 603 (7th Cir. 2005) ..................................................................................7

*Sarver v. Experian Info. Solutions*,
  390 F.3d 969 (7th Cir. 2004) ..................................................................................10

*Taylor v. Screening Reports, Inc.*,
  No. 13 C 02886, 2015 WL 4052824 (N.D. Ill. July 2, 2015) ...........................2, 7, 8

*Ulrich v. United States Dep't of Treasury*,
  129 Fed. App'x 386 (9th Cir. 2005) .......................................................................11

*Waletzko v. Corelogic Credco, LLC*,
  15-CV-317-WMC, 2016 WL 5879597 (W.D. Wis. Oct. 7, 2016) .......................2, 8

*Westra v. Credit Control of Pinellas,*
409 F.3d 825 (7th Cir. 2005) ...............................................................................2, 15

**FEDERAL STATUTES**

15 U.S.C. § 1681a(f) .........................................................................................13

15 U.S.C. § 1681a(u) .................................................................11, 12, 13, 14

15 U.S.C. § 1681c .......................................................................................2, 6, 9

15 U.S.C. § 1681c(a)(5) .............................................................................1, 5, 6

15 U.S.C. § 1681e ...........................................................................................13

15 U.S.C. § 1681g ...........................................................................................13

15 U.S.C. § 1681i(f)(3) .....................................................................................14

**STATE STATUTES**

720 ILCS 570/410 ............................................................................................6

730 ILCS 5/5-6-3.1(f) .................................................................................1, 3, 4

iii

**INTRODUCTION**

The Opposition of Plaintiff Rafaela Aldaco ("Plaintiff") to the Motion for Summary Judgment ("Motion") of Defendant Yardi Resident Screening ("YRS") presents the Court with a simple choice. The Court either may follow the well-reasoned prior decisions of Judge Holderman in *McNamara v. Hireright Solutions, Inc.*, No. 13 C 5215, 2014 WL 321790, at *5-6 (N.D. Ill. Jan. 29, 2014), and Judge Alonso in *Oses v. CoreLogic SafeRent, LLC*, 171 F. Supp. 3d 775, 778-79 (N.D. Ill. 2016), and grant YRS's Motion; or, it can side with Plaintiff's incorrect theory directly contravening those cases and deny the Motion. Respectfully, this should not be a close call.

Plaintiff does not dispute that she previously pled and was found guilty of ▇▇▇▇ in 1996 and that YRS's tenant screening report ("TSR") accurately reported that fact. Nor does Plaintiff dispute that this ▇▇▇▇ record automatically disqualified her from living at The Reserve at Hoffman Estates ("The Reserve"), where she had applied for rental housing. Rather, Plaintiff argues that the ▇▇▇▇ record should not have been included in her TSR at all because she successfully completed her sentence of court supervision, resulting in the dismissal of the criminal case without a "conviction" pursuant to 730 ILCS 5/5-6-3.1(f). This, Plaintiff argues, made the ▇▇▇▇ record a non-conviction criminal record that YRS was prohibited from reporting under the Fair Credit Reporting Act ("FCRA") because the record was more than seven years old. 15 U.S.C. § 1681c(a)(5).

Plaintiff's argument is squarely foreclosed by *McNamara* and *Oses*. In *McNamara*, Judge Holderman specifically held that a consumer reporting agency ("CRA") such as YRS "may report [a] guilty plea and [a] finding of guilt" notwithstanding the plaintiff's "completing [her] supervision" pursuant to 730 ILCS 5/5-6-3.1(f), and that a CRA "may continue to report both dispositions—until, of course, they are sealed or expunged—without fear of liability under the FCRA." *McNamara*, 2014 WL 321790, at *5. And in *Oses*, Judge Alonso – addressing language in the Illinois Controlled Substances Act "identical" to the language in 730 ILCS 5/5-6-3.1(f) upon which Plaintiff relies here – held that a guilty plea that was later dismissed following

successful completion of probation constituted a "record[] of a conviction" to which "the seven-year time limitation of 15 U.S.C. § 1681c does not apply." *Oses*, 171 F. Supp. 3d at 779. Plaintiff's Section 1681c claim simply cannot survive the logic of these decisions.

With this conclusion, the remainder of Plaintiff's case unravels. Because of her criminal record, the disqualification of Plaintiff's rental application was a *fait accompli* under The Reserve's undisputed criteria. Thus, even if Plaintiff's TSR inaccurately stated the length of her supervision term and/or lacked final disposition information, Plaintiff cannot establish a Section 1681e(b) claim because she cannot show, as she must, that such inaccuracies ***caused*** her damages. As in *Taylor v. Screening Reports, Inc.*, No. 13 C 02886, 2015 WL 4052824, at *5 (N.D. Ill. July 2, 2015) and *Waletzko v. Corelogic Credco, LLC*, 15-CV-317-WMC, 2016 WL 5879597, at *7 (W.D. Wis. Oct. 7, 2016) – both of which were discussed in YRS's Motion papers but ignored in Plaintiff's Opposition – Plaintiff's application would have been denied irrespective of the inaccuracies, and thus her Section 1681e(b) claim fails as a matter of law.

Plaintiff incorrectly argues, based on a tortured reading of the FCRA's definition of "reseller," that YRS had more than the limited re-investigation requirements imposed on resellers. But even if this were true (and it is not), her claim still fails. Indeed, Plaintiff ignores the dispositive rule of law that defeats her Section 1681i re-investigation claim: "A reasonable reinvestigation need not extend beyond the scope of the dispute plaintiff raised." *Oses*, 171 F. Supp. 3d at 782. Although it is impossible to tell from reading her Opposition, Plaintiff's dispute here consisted solely of alleging that the ████ record did not belong to her. YRS relayed this dispute to its CRA source, Backgroundchecks.com ("BGC"); BGC confirmed – correctly – that the record did indeed belong to Plaintiff; and YRS advised Plaintiff of the same. Thus, the YRS re-investigation was reasonable "beyond question," and summary judgment is warranted on this claim, as well. *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005).

## ARGUMENT

**I.    McNamara and Oses Are Functionally Identical to this Case and Establish that Plaintiff's Prior Guilty Plea/Finding Was Properly Reported by YRS**

Plaintiff asserts that Judge Holderman's decision in *McNamara* and Judge Alonso's decision in *Oses* are "unpersuasive and distinguishable from the case at bar." (Opp. at 3.) But Plaintiff's Opposition fails to explain why those decisions are incorrect and likewise fails to meaningfully distinguish them. Contrary to Plaintiff's arguments, those decisions clearly and correctly explain why YRS is right, and Plaintiff is wrong.

The plaintiff in *McNamara*, just like Plaintiff here, pled guilty and was found guilty of a criminal misdemeanor, and was given a sentence of court supervision. 2014 WL 321790, at *3. When those records were later included in a background report procured by his employer, the plaintiff in *McNamara* sued the CRA who provided the report under the FCRA. 2014 WL 321790, at *3. The *McNamara* plaintiff argued that:

> [T]he essence of the disposition of 'supervision' in Illinois law is that the defendant is not found guilty of an offense and does not have a criminal record." [] By successfully completing his supervision term, [the plaintiff] asserts that he rid himself of his guilty plea as well as the Circuit Court's finding of guilt. (*Id.*) [The CRA], by continuing to report these purportedly superseded dispositions, violated the FCRA by reporting inaccurate information and thwarted the Illinois legislature's intention that supervision is "not a finding of guilt." [] In support of this contention, [the plaintiff] relies on 730 ILCS 5/5–6–3.1(f), which states that successfully completed supervision "shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law."

2014 WL 321790, at *4 (internal record citations omitted). Plaintiff makes the ***exact same*** arguments here. (Opp. at 3-6.)

Judge Holderman expressly and unequivocally rejected these arguments. The court emphasized that 730 ILCS 5/5–6–3.1(f) – the same provision that Plaintiff concedes is "most important[]" to her argument here (Opp. at 5) – "applies only to certain rights which are lost as a matter of law by criminal convictions," and "does not erase the defendant's criminal conduct from the time-space continuum, or foreclose all consequences of the defendant's prior

misdeeds." 2014 WL 321790, at *4 (internal quotes and citations omitted). This conclusion is apparent from the plain language of the statute, which states that a successfully-completed term of supervision "shall not be termed a conviction ***for purposes of disqualification or disabilities imposed by law upon conviction of a crime***." 730 ILCS 5/5–6–3.1(f).[1] The upshot of this limited qualification is that a guilty plea and finding that is dismissed following supervision ***is*** properly termed a conviction for ***other*** purposes.

Indeed, this is precisely what Judge Holderman held in *McNamara*:

> [A] defendant cannot escape [her] guilty plea, stipulation, or finding outside of the legal system. In *Beard v. Sprint Spectrum, LP*, 833 N.E.2d 449, 452 (Ill.App.Ct.3d Dist.2005), Sprint terminated the petitioner's employment because it determined that he had lied on his application by stating that he had never been convicted of a crime. *Id.* at 450. The petitioner's background report revealed that he was found guilty of a public morals charge and received one month of court supervision which was satisfactorily terminated. *Id.* The Illinois Appellate Court held that Sprint could withhold employment on the basis of the petitioner's guilty plea and was free to disregard any post-supervision dispositions, such as a dismissal. *Id.* at 452. The court explained that ***private employment is not one of the rights statutorily denied to convicts and is thus not protected from impairment under Section 5/5–6–3.1(f).*** *Id.*

> The Illinois Appellate Court's holding in *Beard* unmistakably allows . . . a private employer[] to consider [the plaintiff's] guilty plea in deciding whether to offer him a position. ***It follows that [the CRA], which [the employer] hired to provide background information, may report [the plaintiff's] guilty plea and the Circuit Court's finding of guilt.***

*McNamara*, 2014 WL 321790, at *5 (emphasis added).[2]

---

[1] Plaintiff's citations of a handful of other provisions of Illinois criminal statutes are inapposite. (Opp. at 3-4 (citing 730 ILCS 5/5–1–5, 5/5–1–12, 5/5–1–19, 5/5–1–21, 5/5–6–1).) None of these provisions addresses whether and for what purposes a successfully-completed term of court supervision does or does not constitute a conviction – unlike Section 5/5–6–3.1(f), which addresses that issue directly and clearly states that such a disposition is ***not*** a conviction ***only*** for certain limited purposes. *Cf. In re Gulevsky*, 362 F.3d 961, 963 (7th Cir. 2004) ([W]hen both a specific and a general provision govern a situation, the specific one controls.").

[2] Although *McNamara* involved employment, the same considerations pertain to Plaintiff's rental application here. Rental housing is likewise "not one of the rights statutorily denied to convicts and is thus not protected from impairment under Section 5/5–6–3.1(f)." 2014 WL 321790, at *5. Further, Plaintiff presents no argument – let alone citation to authority – that a putative landlord, such as The Reserve here, does not have the same right as an employer "to consider [Plaintiff's] guilty plea in

*(Footnote continued on next page)*

Plaintiff attempts to distinguish *McNamara* on the ground that *McNamara* did not "directly address" whether a guilty plea and finding could be "displayed [on a background report] *at all* after the allowable 7-year period." (Opp. at 7 (emphasis in original).) This is sophistry. The discussion in *McNamara* revolved directly around whether a guilty plea and finding preceding a successful term of court supervision was reportable on a background report, or whether the non-conviction language in Section 5/5–6–3.1(f) rendered it non-reportable. Judge Holderman unequivocally held it was reportable. Nothing in *McNamara* suggests that the court there viewed the records as non-conviction information with a seven-year shelf life under 15 U.S.C. § 1681c(a)(5). To the contrary, the court expressly stated that the CRA there "may continue to report both [the plea and finding of guilt]—until, of course, they are sealed or expunged—without fear of liability under the FCRA." *McNamara*, 2014 WL 321790, at *5. Thus, the court expressly contemplated whether and when the CRA might no longer be permitted to report the records, and stated that the only such triggering events would be the sealing or expungement – not the mere passage of seven years.[3]

Even if *McNamara* were somehow distinguishable on this basis (and it is not), Judge Alonso's decision in *Oses* addressed the seven-year issue directly and rejected the same argument Plaintiff makes here. 171 F. Supp. 3d 775, 779 (N.D. Ill. 2016) (rejecting plaintiff's argument that he "completed his probation satisfactorily, so the disposition of his case is properly characterized as 'discharge and dismissal," not a "conviction," and the FCRA's seven-year limitations period applies"). Plaintiff attempts to distinguish *Oses* by purportedly contrasting the "disposition of supervision" in this case with the "probation" at issue in *Oses*, arguing that the latter "is issued as a sentence that is imposed after a judgment is entered—which

---

*(Footnote continued from previous page)*
deciding whether to offer" her an apartment. *Cf. id.* It does, and just like the CRA in *McNamara*, YRS had the right to include Plaintiff's guilty plea and finding in her TSR.

[3] Here, of course, it is undisputed that Plaintiff – despite having had the right to do so for many years – did not obtain expungement of her criminal record until after YRS produced the TSR at issue. (*See* Ex. 20, May 1, 2016 Expungement Order.)

is the very definition of conviction under Illinois law." (Opp. at 7.) For this assertion, Plaintiff cites to several statutory provisions, none of which are mentioned in *Oses*, but she does not discuss the actual provision at issue in *Oses*: 720 ILCS 570/410. Even a cursory review of that statute makes clear that Plaintiff is wrong.

Contrary to Plaintiff's representation that "probation" is "a sentence that is imposed after a judgment is entered," Section 570/410 actually provides that a defendant may be sentenced to probation "without entering a judgment"; that the court "shall defer further proceedings in the case until the conclusion of the period"; that "[u]pon fulfillment of the terms and conditions of probation, the court shall discharge the person and dismiss the proceedings against him or her"; and that "discharge and dismissal under this Section is not a conviction for purposes of this Act or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." 720 ILCS 570/410(a), (b), (f), (g). Thus, just as Judge Alonso expressly stated, the statute at issue in *Oses* is materially "identical" to the statute at issue here and in *McNamara*. *Oses*, 171 F. Supp. 3d at 779. Plaintiff's attempt to distinguish *Oses* does not withstand the slightest scrutiny.

Because *Oses* involved the same claim under Section 1681c(a)(5) of the FCRA, the same arguments made by the plaintiff, and materially identical provisions of Illinois criminal law, Judge Alonso's reasoning in that case is dispositive here:

> Nothing in Illinois law or the FCRA supports plaintiff's position that [her] sentence of [supervision] may not be considered a conviction for purposes of a criminal background search conducted at the behest of a private [landlord]. Because the records of [her prior criminal case] are records of a conviction, the seven-year time limitation of 15 U.S.C. § 1681c does not apply. Defendant's motion for summary judgment on plaintiff's § 1681c claim is granted.

*Oses*, 171 F. Supp. 3d at 779. This Court should grant YRS summary judgment on Plaintiff's Section 1681c claim on the same basis.

**II.    Plaintiff's Section 1681e(b) Claim Fails Because None of the Alleged Inaccuracies in Her TSR Caused Her Rental Application to Be Denied and, In any Event, YRS Was Permitted to Rely on BGC**

Once the Court accepts, as it should, that YRS was permitted to report Plaintiff's plea and finding of guilt with respect to the 1996 ▮▮▮▮▮charge, Plaintiff's Section 1861e(b) claim falls by the wayside. This is because this aspect of Plaintiff's criminal record – i.e., the guilty plea and finding alone – would have disqualified her rental application under any circumstances. (SUF ¶ 37, Ex. 17, BH Management Resident Screening Criteria at RG00239). It is also undisputed that all of the alleged damages Plaintiff allegedly incurred resulted from The Reserve's denial of her rental application, and not any other occurrence. Plaintiff concedes as much in her Opposition, asserting that "the rental application was denied *because* the TSR revealed an obsolete criminal record, and because YRS reported to the management company that Plaintiff did not meet the property's requirements." (Opp. at 18 (emphasis in original).) If the word "obsolete" is excised from this sentence – and it must be for the reasons stated in the foregoing section – Plaintiff is entirely correct. And her concession in this regard is dispositive of her Section 1681e(b) claim.

The applicable rule of law is well-established in this Circuit: "Before any discussion of the reasonableness of [YRS's procedures] is necessary," Plaintiff "must show that she 'suffered damages as a result of the inaccurate information.'" *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)). Beyond her incorrect assertion that the guilty plea and finding were not permitted to be reported, Plaintiff arguably identifies two items of information that were inaccurate: (1) the indication that Plaintiff was sentenced to 60 months of court supervision, as opposed to six months; and (2) the lack of any final disposition. (Opp. at 12.) Thus, the proper inquiry is whether either such inaccuracy "was a substantial factor that led [the property manager] to reject [her] rental application or caused the other asserted actual damages."

*Taylor v. Screening Reports, Inc.*, No. 13 C 02886, 2015 WL 4052824, at *5 (N.D. Ill. July 2, 2015).

The undisputed record evidence establishes that Plaintiff's rental application was denied, and would have been denied, because of the fact that she pled and was found guilty of █████ period. As noted above, Plaintiff's Opposition concedes this. There is no record evidence that the inaccuracy in the length of Plaintiff's supervision term played any role in the denial of her application. Put differently, whether YRS had reported that Plaintiff's supervision was six weeks, or six months, or six hundred months, that she pled and was found guilty of █████ alone would have resulted in the rejection of her application. The fact is that Plaintiff's prior █████ record sealed the fate of her application at The Reserve. Plaintiff does not truly argue – let alone present evidence – otherwise.

*Taylor* is just like this case. There, the plaintiff was denied an apartment she desired based on the inclusion of an eviction case in her background report. *Taylor*, 2015 WL 4052824, at *2. The plaintiff alleged that the eviction case should not have been included in her background report "at all" and, further, that the date of the disposition of the case was incorrect. *Id.* at *5. The court held that the eviction case was properly included, but that the date was arguably incorrect. *Id.* at *3-4. However, the court dismissed the plaintiff's Section 1681e(b) claim because the plaintiff had not alleged any facts connecting the denial of the apartment to the incorrect disposition date in the background report. *Id.* at *5. Rather, the plaintiff lost the apartment because of the properly reported eviction case. *Id.* Likewise here, Plaintiff lost the apartment because of the properly reported █████ records, not because of any inaccuracy in the length of her supervision term or to the absence of disposition information. Tellingly, Plaintiff does not address *Taylor* in her Opposition, even though YRS's initial memorandum highlighted its relevance here. Nor does Plaintiff address *Waletzko v. Corelogic Credco, LLC*, 15-CV-317-WMC, 2016 WL 5879597, at *7 (W.D. Wis. Oct. 7, 2016), another in-Circuit decision applying the same analysis in granting summary judgment to a CRA on a Section 1681e(b) claim.

Instead, Plaintiff relies entirely on out-of-Circuit cases involving consumer credit, particularly *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995). (Opp. at 17-18.)  This reliance is misplaced.  In *Guimond*, the plaintiff actually presented uncontroverted evidence that her emotional distress was caused by the mere existence of inaccurate information in a credit report itself, and not any resulting denial of credit.  45 F.3d at 1333.  Here, by contrast, Plaintiff's alleged damages are directly connected to the denial of her rental application.  Plaintiff presents no evidence that she suffered emotional distress or was otherwise injured as a result of any inaccuracy in the TSR regarding the length of her supervision term or the disposition of the ███ case.  Moreover, even if *Guimond* were on point, the Seventh Circuit has expressly disagreed with *Guimond*'s expansive view of the reach of the FCRA's liability provisions and has made clear that a plaintiff must present evidence that an alleged FCRA violation actually caused her injury to avoid summary judgment.  *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (affirming summary judgment where plaintiff "failed [] to present evidence that any of the creditors who denied him credit . . . did so because of" the CRA's allegedly unreasonable procedures).

Plaintiff simply does not make any such showing here.  Rather, Plaintiff relies on inapposite, out-of-Circuit case law of questionable validity in this Circuit, ignoring cases within this very District discussing Section 1681e(b) causation in precisely the context presented here.  Because Plaintiff fails to establish that the inaccuracies in her TSR caused her damages, her Section 1681e(b) claim fails as a matter of law.

Even if Plaintiff could surmount this hurdle (and she cannot), YRS's procedures were more than reasonable here.  Plaintiff does not dispute that YRS conducts a two-stage filtering system, first using software algorithms, and then human review, to ensure that criminal records belong to the correct applicant and are substantively reportable under 15 U.S.C. § 1681c.  (Opp. at 13.)  Plaintiff presents no evidence challenging YRS's showing that in January 2016, the month Plaintiff's TSR was issued, YRS's criminal record reports had an accuracy rate of more

than ██.[4]   And Plaintiff does not dispute that the criminal records reported here did, in fact, belong to her, and lined up verbatim with the information YRS has purchased from BGC. (SUF ¶ 39.)

Plaintiff also does not challenge the validity of the applicable rule of law here: "If a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate [§ 1681e(b)] simply by reporting an item of information that turns out to be inaccurate." *Darrin v. Bank of Am., N.A.*, No. 2:12-cv-00228-MCE-KJN, 2014 WL 1922819, at *6 (E.D. Cal. May 14, 2014); *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994).  Rather, Plaintiff attempts to attack BGC's reputability, despite YRS's ██%-plus accuracy rate while using BGC during the relevant time frame.

This effort fails.  A CRA such as YRS is protected by the reliance-on-reputable-source rule unless it has "notice of prevalent unreliable information" from the source.  *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004).  Plaintiff presents no evidence that YRS had received "prevalent unreliable information" from BGC, nor could she, in light of the accuracy rate.   Instead, Plaintiff cites contract language between YRS and BGC for the proposition that "YRS was on notice that BGC was not a reliable source of data."  (Opp. at 15.) This is wrong.  None of the language cited by Plaintiff supports this assertion.  At most, BGC's representation that its database did not meet FCRA requirements simply meant that BGC's "raw data" could not be merged into a FCRA-compliant background report verbatim without further vetting.  YRS performed precisely that required vetting through its two-step filtering process.

---

[4] Plaintiff appears to argue that because YRS does not know whether there are inaccuracies in TSRs that do not generate consumer disputes, this accuracy percentage may be inflated.  (Opp. at 15-16 n.8.)  But the absence of disputes over nearly ██% of YRS's TSRs containing criminal records is itself evidence of accuracy.  In other words, the proof is in the pudding.  Plaintiff presents no evidence or argument for how YRS might reasonably be able to assess accuracy for reports that that are not disputed, nor does Plaintiff present any evidence that YRS's accuracy percentage is, in fact, inflated.  At bottom, the only record evidence in this case shows that less than █% of YRS's criminal background reports in the relevant time period were ultimately deemed to contain an inaccuracy.

Likewise, BGC's warranty disclaimer as to the accuracy of the criminal record information it provided – which it, in turn, obtains from independent third party sources – does not render it a non-reputable source. Legal boilerplate seeking to *limit BGC's liability to YRS* for potential reporting inaccuracies cannot plausibly be read to *impose on YRS a duty to Plaintiffs* to independently verify each item of information from BGC, such as the length of Plaintiff's court supervision term, before reporting it. Plaintiff argues that "YRS was warned not to rely on the data it received from BGC" (Opp. at 15), but this is wrong as a matter of fact – none of the contract language actually says this – and as a matter of law. *See Ulrich v. United States Dep't of Treasury*, 129 Fed. App'x 386, 389 (9th Cir. 2005) (a party's "disclaimer of legal liability [does] not render" information provided by that party "insufficiently reliable"). Plaintiff confuses a boilerplate limitation on liability with a warning of unreliability. The case law confirms that a source's inability or unwillingness to verify the accuracy of information it reports does not alone render such source unreliable for purposes of Section 1681e(b). *See Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 841-42 (N.D. Ill. 2005) (rejecting "wholly unconvincing" argument that a source's non-verification of reported information rendered it unreliable).

The CFPB's October 2015 consent order supports YRS's reliance on BGC. Regardless of what deficiencies existed in BGC's procedures *predating* that consent order, since that time, BGC has been obligated to follow the CFPB's strict instructions for compiling and supplying criminal record information. Plaintiff does not present evidence that BGC was in violation of this order in January 2016, when Plaintiff's TSR was issued, or that YRS was aware of any such violation. Thus, Plaintiffs present no evidence that would support the conclusion that YRS had knowledge that BGC was providing prevalent unreliable information, particularly in light of the ██%-plus accuracy rate. In the absence of any such evidence, summary judgment is appropriate on Plaintiff's Section 1681e(b) claim.

### III. YRS Is a Reseller, and Fully Complied with Its Reinvestigation Obligations Under Any Standard

Plaintiff engages in a misleading line of argument intended to cast doubt on YRS's status as a "reseller" CRA defined under 15 U.S.C. § 1681a(u). The Court should not be misled. The FCRA defines as "reseller" as a CRA that: (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, *to the extent of such activities* and; (2) does not maintain a database of the assembled or merged information *from which new consumer reports are produced*. 15 U.S.C. § 1681a(u) (emphasis added). Plaintiff's argument improperly depends on (i) excising the emphasized language in the first prong of the definition; and (ii) misreading the emphasized language in the second prong of the definition. A proper reading of the statutory definition leads to conclusion that YRS is a reseller as a matter of law.

It is undisputed that YRS obtained the information regarding Plaintiff's criminal history from a database operated by BGC, a consumer reporting agency. (*See* Resp. to SUF ¶ 23.) Furthermore, Plaintiff does not dispute that YRS reported Plaintiff's criminal record exactly as it received the record from BGC, subject to its completion of the two-step filtering process. (*See* Resp. to SUF ¶ 39.) It is therefore undisputed that YRS merged the information from BGC with information from other sources into a TSR for the purposes of furnishing that information to The Reserve. Thus, *to the extent of these activities*, YRS met the first prong of the definition of a "reseller."

Plaintiff, relying on *Poore v. Sterling Testing Systems, Inc.,* 410 F. Supp. 2d 557 (E.D. Ky. 2006), argues that YRS is not a reseller because it "create[d] information contained on the TSR" and "evaluates data to determine whether a potential tenant meets the property's

12

requirements." (Opp. at 8-9.) This argument fails to acknowledge that the FCRA contemplates that a reseller may evaluate data. Indeed, every reseller is a "consumer reporting agency," 15 U.S.C. § 1681a(u), which is defined as "any person which . . . regularly engages . . . in the practice of assembling *or evaluating* consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f) (emphasis added). By defining a reseller "to the extent of" its reselling activities, the FCRA clearly contemplates that a reseller may engage in activities beyond those set forth in the first prong of the definition, but maintain its reseller status when it is, in fact, reselling consumer background information. 15 U.S.C. § 1681a(u).

*Poore* is distinguishable for this reason, among many others. There, a CRA unsuccessfully argued it was a "reseller" where it reported not only criminal records it obtained from a third party, but also its impressions of the consumer's work and business skills it had obtained by conducting an interview with the consumer's former employer. *Poore,* 410 F. Supp. 2d at 569. This clearly goes far beyond YRS's objective determination whether the criminal background information it obtained from BGC met the criteria set by The Reserve. Tellingly, Plaintiff cites no authority for the proposition that a CRA that otherwise meets the definition of a reseller "loses" that status when it reports an objective determination along these lines. No such authority exists, and nothing in the FCRA suggests, let alone compels, this result.

Plaintiff also contends that YRS cannot be a reseller because it "stores the raw data it received in its database" and because it "suppresses information not requested, information that is not reportable, or data that is questionable." (Opp. at 8-9.) This argument cannot possibly be correct. If engaging in such activities precluded reseller status, it would be impossible for resellers to comply with their *other* obligations under the FCRA. *See, e.g.,*15 U.S.C. § 1681g

13

(requiring consumer reporting agencies to disclose all information in a consumer's file at the consumer's request); 15 U.S.C. § 1681e (requiring consumer reporting agencies to follow reasonable procedures to assure the maximum possible accuracy of the information it reports). Nothing in the definition of "reseller" prohibits these activities, or suggests that engaging in them results in a loss of reseller status.

Finally, although YRS maintains a file on each consumer about whom it prepares a TSR, YRS does ***not*** use the information in such file to produce "new consumer reports." Thus, YRS is in compliance with the second prong of the definition set forth in Section 1681a(u). Plaintiff presents no evidence that YRS produced "new consumer reports" based on information in her file, or any other. Plaintiff misleadingly cites testimony regarding the process of creating ***copies*** of Plaintiff's TSR ***for this litigation*** to suggest that YRS created "new consumer reports" from its "database." (*See* Dkt. 53, ¶¶ 53-54.) Of course, these are not "new consumer reports" and YRS cannot be deemed to be non-reseller CRA simply because it complied with its discovery obligations in this litigation. That Plaintiff would make such a specious assertion to attack YRS's reseller status only exposes the weakness of her argument.

Because YRS is a reseller to the extent of its reselling of criminal record information from BGC, it complied with its reinvestigation obligations under Section 1681i(f). YRS forwarded Plaintiff's dispute materials to BGC, obtained BGC's response, and reported that response to Plaintiff. (SUF ¶¶ 39-48.) That was all YRS was required to do.[5]

---

[5] Plaintiff asserts that YRS could not have conducted a reasonable investigation because it was not sure of BGC's internal procedures for conducting its own re-investigation. (Opp. at 11.) But nothing in Section 1681i(f) requires a reseller to learn about its source CRA's re-investigation procedures. Indeed, in such circumstances, the source CRA has its own Section 1681i re-investigation obligations, and is itself subject to FCRA liability if it fails to fulfill them. 15 U.S.C. § 1681i(f)(3).

Even if, *arguendo*, YRS had standard CRA reinvestigation obligations, Plaintiff's Section 1681i re-investigation claim still fails as a matter of law. "A reasonable reinvestigation need not extend beyond the scope of the dispute plaintiff raised." *Oses*, 171 F. Supp. 3d at 782 (citing *Scheel-Baggs v. Bank of Am.*, 575 F. Supp. 2d 1031, 1041 (W.D. Wis. 2008)). Although her Opposition mainly avoids this point, Plaintiff's dispute alleged only that she was not the person to whom the record belonged. (SUF ¶¶ 39-48.) BGC confirmed that it was her record, and YRS advised her accordingly. In its moving papers, YRS cited multiple decisions holding that summary judgment is appropriate in these circumstances. *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005) (reinvestigation under the FCRA is reasonable "beyond question" when based on the information provided by the consumer); *Oses*, 171 F. Supp. 3d at 782 (granting summary judgment on Section 1681i claim because "[p]laintiff disputed only that he was the criminal defendant in the report defendant had issued," and "defendant was not required to identify inaccuracies plaintiff himself had not identified"). By failing to address these arguments and authorities in her Opposition, Plaintiff concedes the point.

## CONCLUSION

Defendant RentGrow, Inc. d/b/a Yardi Resident Screening, by and through its attorneys, hereby requests that this Court enter summary judgment in favor of Defendant on all causes of action brought by Plaintiff in the instant action and order dismissal of this case, with prejudice, in addition to all other appropriate relief.

Dated: July 6, 2017                                    Respectfully Submitted,


                                                       */s/ Patrick R. Duffey*

                                                       **Deanna R. Kunze**
                                                       dkunze@nixonpeabody.com
                                                       **Laura B. Bacon**
                                                       lbbacon@nixonpeabody.com
                                                       **Patrick R. Duffey**
                                                       pduffey@nixonpeabody.com

**NIXON PEABODY LLP**
70 West Madison, Suite 3500
Chicago, IL 60602
P: 312-977-4400
F: 844-872-9569

*Attorneys for Defendant RentGrow, Inc.*
*d/b/a Yardi Resident Screening*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing was filed electronically on this 6th day of July, 2017, in compliance with the General Order on Electronic Case Filing, Section III(B)(1). As such, this document was served on all counsel who are deemed to have consented to electronic service. Fed R. Civ. P. 5(b)(2)(E) and Local Rule 5.9.

*/s/ Patrick R. Duffey*
Patrick R. Duffey
