# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RAFAELA ALDACO, | ) | |
| | ) | Case No.: 1-16-CV-05754 |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | The Honorable Joan H. Lefkow |
| | ) | |
| RENTGROW, INC. d/b/a Yardi Resident Screening, | ) | **REDACTED PURSUANT TO LOCAL** |
| | ) | **RULE 26.2** |
| | ) | |
| *Defendant*. | ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED AND DISPUTED FACTS AND SEPARATE STATEMENT OF ADDITIONAL FACTS

Defendant Rentgrow, Inc. d/b/a Yardi Resident Screening ("YRS"), pursuant to Local Rule 56.1, submits the following reply to Plaintiff Rafaela Aldaco's ("Plaintiff") Statement of Undisputed Additional Material Facts ("SAMF") submitted in connection with the Plaintiff's Response to Defendants' Motion for Summary Judgment.

## INTRODUCTORY STATEMENT AND GENERAL OBJECTIONS

Because this Court disfavors motions to strike, YRS makes no such motion but does include this introductory statement and general objections. The Local Rule 56.1 Statement of Undisputed Material Facts should identify relevant, admissible evidence supporting the material facts, not make either factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"); *see also Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012) ("Opinion, suggested inferences, legal arguments, and conclusions are not the proper subject matter" of a statement of facts).

The vast majority of Plaintiff's Additional Statements of Fact are wholly immaterial and irrelevant to the instant motion. For instance, SAMF Nos. 72-75 exclusively concern Plaintiff's alleged damages, which have no bearing on the instant motion. Other SAMF's attempt to "re-word" prior SUMF and incorporate immaterial and irrelevant allegations. Despite YRS's requirement to dispute many of the SAMF due to these issues and others identified below, there remains no dispute of any fact material to the underlying motion and request for summary judgment.

YRS objects to Plaintiff's SAMF Nos. 50, 52-42, 56-60, 70, 72-75 because they are neither relevant nor material, or to the extent they may be relevant, are duplicative of other SUMF as stated within the individual responses.

YRS also objects to SAMF Nos. 55, 60, 68-71, and 76 because they contain improper legal argument and conjecture.

Additionally, YRS objects to SAMF Nos. 63 and 71 because Plaintiff violates LR 56.1(a), requiring statements of fact to "consist of short numbered paragraphs." *Koszola v. Bd. Of Educ. Of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (explaining the Court is entitled to expect strict compliance with its local rules regarding summary judgment); *Ezell v. Bass*, No. 09-Civ-6908, 2012 WL 379744, at *2 (N.D. Ill. Feb. 1, 2012) (explaining a court need not wade through excessive statements of fact to determine which disputes are genuine including writing statements of fact that are lengthy and compound).

## REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

**SAMF No. 50:**

YRS stores raw data it receives in its database, and YRS creates information contained on the tenant screening reports. (SUF Ex. 1 Hennessey Dep. 34:11-16.) The criminal record information YRS requests from BGC is raw data, not a compiled report. *Id.* at 144:23-145:7 (referring to SUF Exhibit 11, showing a printed version of the raw data received from BGC). YRS does not forward the raw criminal data it receives from BGC to the management company. (*Id.* at 32:24-33:8.)

**RESPONSE 50:** Disputed in part. First, YRS does not "create information" and no such

testimony exists at the cited references. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill.

2000) (explaining L.R. 56.1 requires citation to specific evidentiary materials). Second, while

counsel characterized the data received from BGC as a "compilation of raw data" in the cited

transcript at 144:23-145:7, the meaning of "raw data, not a compiled report" or "raw data

received from BGC" is at best unclear here, and therefore, YRS also objects to the form of this

statement as vague and misleading. Third, the testimony at 32:24-33:8 refers only to the specific

document at RG 0009-00013, not the information contained therein. The document itself was

provided by BGC only as part of its investigation into Plaintiff's dispute, not as part of the

original background check process through the Yardi portal system. Plaintiff's attempt to

conflate this document with the information contained therein is taken out of context and is

misleading. Statements of facts where quotations are taken out of context and restrict the

statement's veracity should be stricken. *See Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*,

No. 08-CV-111, 2011 WL 1374980, at *3 (N.D. Ill. Apr. 12, 2011).

To the extent that any portion of SAMF 50 is undisputed, it is duplicative of at least

YRS's Statements of Undisputed Material Facts ("SUMF") Nos. 6, 14, and 16.

**SAMF No. 51:**

      YRS has to analyze the data, and exclude information that was not requested or not appropriate to include in a report (i.e., information that belongs to another consumer, was not reportable for some other reason.) (Ex. 1 Hennessey Dep 95:2-5; 96:19-97:2.) The collected data is stored for ███████████████████████████████████████. (Ex. 2 Hennessey Dep. 7:18-21.)

**RESPONSE 51:** Disputed in part.  It is misleading to state that "YRS *has* to analyze the data."

(emphasis added.)  YRS applies its two-step screening process, as described in SUMF Nos. 17-

21.  The citation at 95:2-5 discusses only what a public records analyst does during the second

phase of the screening process, after an automatic filtering process reveals a criminal record.

(See Ex. 1 at 94:11-95:1.)  The citation at 96:19-97:2 specifically discusses a product no longer

offered by YRS and not at issue in this case and therefore is immaterial. (See Ex. 96:19-97:2,

"Before premium services were available, we and the screening company…"; see also 29:7-17,

referring to the use of the premium national criminal record search by Reserve at Hoffman

Estates in requesting Plaintiff's background check, and RG 30-32, referenced in that testimony.)

Therefore, these recitations likewise are misleading, and statements of facts where quotations are

taken out of context and restrict the statement's veracity should be stricken.  *See Zaragon*

*Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08-CV-111, 2011 WL 1374980, at *3 (N.D. Ill.

Apr. 12, 2011).

      Additionally, YRS objects to the term "collected data" as vague.  The testimony at Ex. 2,

7:18-21 is clear that the tenant screening report, or "applicant file," is stored for seven years in

the CRM system.  What "collected data" is referred to is unknown.  *See Malec v. Sanford*, 191

F.R.D. 581, 584 (N.D. Ill. 2000) (explaining L.R. 56.1 requires citation to specific evidentiary

materials).

**SAMF No. 52:**

In the instant matter, Plaintiff's TSR states: "Individual Result: Does Not Meet Requirements." SUF Exhibit 5.   YRS testified that statement is YRS's assessment that the applicant does not meet the requirements of the management company.  (Ex. 1 Hennessy Dep. 42:11-20.)

**RESPONSE 52:** Disputed in part.  When counsel for Plaintiff asked Mr. Hennessey at 42:11-20

"Does not meet requirements, that statement is Yardi's statement that the applicant's criminal

background did not comply with the parameters that the landlord set, correct?", Mr. Hennessey

replied "Yes."  Nowhere does Mr. Hennessey testified that the statement is YRS's "assessment."

*See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (explaining L.R. 56.1 requires

citation to specific evidentiary materials).  Again, statements of facts where quotations are taken

out of context and restrict the statement's veracity should be stricken.  *See Zaragon Holdings,*

*Inc. v. Indian Harbor Ins. Co.*, No. 08-CV-111, 2011 WL 1374980, at *3 (N.D. Ill. Apr. 12,

2011).

SAMF 52 likewise is duplicative of at least SUMF Nos. 7 and 8.

**SAMF No. 53:**

When Plaintiff asked to received her consumer report after her denial, YRS did not have to re-request any information from its criminal background check vendor, because the information that was contained in her consumer report was stored in YRS's database.  (Ex. 2 Hennessey Dep. 6:14-20.  Exhibit 36.) The following day, on January 13, 2016 at 3:52 p.m. a new report was generated and it consisted of the data previously obtained from BGC and a new OFAC Name Search.  (Ex. 2 Hennessey Dep. 6:14-20, 7:2-12.) Finally, YRS generated a third report on Plaintiff, on June 3, 2016.  (Ex.5).  When it generated this report it did not re-request any information from BGC, because by June 3, 2016, Plaintiff's criminal record had been expunged and would not have appeared if a new search had run through BGC.  (Ex. 20.  Ex. 1 Hennessey Dep. 9-20.)

**RESPONSE 53:** Disputed in part. YRS does not dispute that it maintained Plaintiff's consumer report, i.e. the tenant screening report, including the information contained therein from BGC, and that it did not re-run a criminal history background check on Plaintiff when she requested her consumer report.

YRS does dispute that a "new report was generated" on January 13, 2016 at 3:52 p.m. or that a "third report was generated on June 3, 2016." The YRS system simply automatically updates or "reruns" the OFAC check whenever a tenant screening report is re-opened. (Ex. 1, 37:11-13; Ex. 2, 40:11-25.) The face of the tenant screening report reflects the date that the premium national criminal search was conducted, which is all that is at issue here. (See Ex. 5; SUMF 38.) YRS objects that the "OFAC" check is irrelevant and intended to mislead. FRE 401, 403. Additionally, again, statements of facts where quotations are taken out of context and restrict the statement's veracity should be stricken. *See Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08-CV-111, 2011 WL 1374980, at *3 (N.D. Ill. Apr. 12, 2011).

YRS also objects to the statement "because by June 3, 2016, Plaintiff's criminal record had been expunged and would not have appeared if a new search had run through BGC." Not only is this misleading, but it is pure speculation. FRE 611.

**SAMF No. 54:**

The data it keeps is not only the data that it placed on Plaintiff's report, it is also the data it excluded from her report. SUF Exhibit 35 shows data stored in YRS's database that is received from BGC. (Ex. 1 Hennessey Dep. 156:1-3.)

**RESPONSE 54:**  Disputed in part.  YRS objects because both the use of the pronoun "it" and the term "data" referenced here are undefined and impermissibly vague.  Additionally, it is unclear whether "report" refers to Plaintiff's tenant screening report or some other report.  YRS also objects to the extent that Plaintiff here attempts to divide any "data" received from BGC, into two different types.  Both here and in the general process by YRS in its premium criminal national search product, YRS simply receives a report from BGC, and if that report contains "hits," i.e. if it includes any offense records, YRS then has a public records analyst review those hits to ensure they are reportable.  (SUMF Nos. 17-21.)  If the YRS public records analyst determines that any offense is unreportable, then that offense is excluded from the tenant screening report and the client's (here, The Reserve at Hoffman Estates) rental criteria are not applied to any excluded record, as described in SUMF Nos. 17-21.

To the extent that any information here is not disputed, it is duplicative of at least SUMF Nos. 17-21.

**SAMF No. 55:**

Plaintiff had no recollection of the events leading up to the charge that appeared on her background check and therefore disputed it as not being hers.  (Ex. 3 Aldaco Dep. 178:3-12. 187:2-4.) Moreover, she was never convicted of a crime, and so did not remember a conviction. (Ex. 3 Aldaco Dep. 187: 18; 188:2-3; 285:22-24; Ex. 19.)

**RESPONSE 55:** Disputed in part. First, this entire statement is immaterial to the motion at issue. While Plaintiff claimed she did not remember the specific acts or events that gave rise to her 1996 ███ conviction, she did remember doing community service *after* the conviction— which was part of her sentence. (Ex. 3 at 182:12-183:8.) Indeed, despite the certified court record of the 1996 ███ conviction, which Plaintiff conceded belonged to her, Plaintiff still testified in her deposition testimony that the 1996 ███ conviction record—which she applied to have expunged—did not belong to her, though she previously conceded in the Complaint, and in fact throughout this case, that the record is hers. (*See* SUMF 41; Compl. ¶¶ 8-10; Ex. 3, Aldaco Dep. At 186:11-190:8; Ex. 19, Court Disposition.)

YRS further objects to Plaintiff's testimony and legal argument that "she was never convicted or a crime…" If Plaintiff is attempting to argue that her 1996 ███ conviction no longer has the *legal effect* of a criminal conviction, then that testimony is barred as an impermissible legal conclusion. FRE 601, 701, 702. If she is attempting to argue that the record of her conviction is false or never happened, then that is belied by the certified record itself. (Ex. 19.)

**SAMF No. 56:**

YRS's policy and procedure with respect to conducting an investigation upon receiving a dispute consists o███████████████████████████████████████████████ (Ex. 1 Hennessey Dep. 172:22-25.) This is the only action YRS takes to investigate the dispute. (*Id.* at 174:21-25.)

**RESPONSE 56:** Disputed in part.  First, this statement is irrelevant given the nature of Plaintiff's dispute—that the record was not hers—and is misleading.  As a reseller, YRS first forwards the dispute received to the data furnisher, in this case, BGC, who conducts the reinvestigation.  *See* SUMF Nos. 42, 43.  ███████████████████████████████████████████████████████.  *See* SUMF Nos. 43.  To the extent that anything in this paragraph is not disputed, it is duplicative of SUMF Nos. 42 and 43.

**SAMF No. 57:**

After receiving Plaintiff's dispute, YRS's investigation consisted ████████████████ ███████████████████████████████ as memorialized in Exhibit 15.  (Ex. 15, Ex. 1 Hennessey Dep. 215:10-23.)  Exhibit 15 is a screenshot of the CRM system which logs activities pertaining to the investigation of Plaintiff's dispute and is the only document pertaining to YRS's investigation.  (*Id.* at 210:17-21.)  The investigation started and ended on January 14, 2016.  (Ex. 15.)

**RESPONSE 57:** Disputed in part.  See SAMF 56 above.  First, this statement is irrelevant given the nature of Plaintiff's dispute—that the record was not hers—and is misleading.  As a reseller, YRS first forwards the dispute received to the data furnisher, in this case, BGC, who conducts the reinvestigation.  *See* SUMF Nos. 42, 43.  YRS then, as a courtesy, attempted to reach the Cook County Clerk's office.  *See* SUMF Nos.  43.  To the extent that anything in this paragraph is not disputed, it is duplicative of SUMF Nos. 42 and 43.

**SAMF No. 58:**

███████████████████████████████████████████████████ .  (Ex. 1 Hennessey Dep. 175:1-8.) ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████

**RESPONSE 58:** Undisputed, but objected to as not relevant and misleading, for the reasons stated in Response to SAMF 56-57. FRE 401, 403. As a reseller, YRS first forwards the dispute received to the data furnisher, in this case, BGC, who conducts the reinvestigation. *See* SUMF Nos. 42, 43. YRS then, as a courtesy, attempted to reach the Cook County Clerk's office. *See* SUMF Nos. 43. This paragraph also is duplicative of SUMF Nos. 42 and 43.

**SAMF No. 59:**

████████████ (Ex. 1 Hennessey Dep. 176:2-8.) Other than these two steps, YRS awaits the result of their vendors' investigation, ▌hough YRS does not know how their vendors, specifically BGC, conducts their investigation. (*Id.* at 180:24-181:6.)

**RESPONSE 59:** Undisputed, but objected to as not relevant and misleading, for the reasons stated in Response to SAMF 56-57. FRE 401, 403. Additionally, YRS objects to the references to "any other phone calls" and "Other than these two steps" as vague and not capable of understanding. FRE 403, 611. As a reseller, YRS first forwards the dispute received to the data furnisher, in this case, BGC, who conducts the reinvestigation. *See* SUMF Nos. 42, 43. YRS then, as a courtesy, attempted to reach the Cook County Clerk's office. *See* SUMF Nos. 43. This paragraph also is duplicative of SUMF Nos. 42 and 43.

**SAMF No. 60:**

YRS's two step filtering process to assure maximum possible accuracy employs an automatic filtering process and a manual filtering process. Step two employs the use of a live person (public records analyst) to review the criminal records to ensure the records are accurate and up-to-date, and to evaluate the records to determine if a prospective tenant meets the properties requirements. (Ex. 1 Hennessey Dep 34:11-16.) ████████████████████ ████████████████ (*Id.* at 33:24-34:2.)

**RESPONSE 60:** Disputed in part. First, this paragraph is nearly entirely duplicative of SUMF Nos. 17-21. Second, this paragraph is misleading and misstates the cited testimony. The YRS public records analyst *applies* the client's criteria to the reportable criminal offenses returned— the analyst does no "evaluation" of the records. Mr. Hennessey clearly states in the testimony cited here that the analyst "applied the criteria…" Statements of facts where quotations are taken out of context and restrict the statement's veracity should be stricken. *See Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08-CV-111, 2011 WL 1374980, at *3 (N.D. Ill. Apr. 12, 2011).

Additionally, Mr. Hennessey confirmed that the two-step filtering process ***in this case***, i.e. the two-step filtering process for Plaintiff's tenant screening report, took three minutes. (Ex. 1 at 33:24-34:25.) Mr. Hennessey ***did not*** testify that the two-step filtering process always takes three minutes for any tenant screening report. Additionally, YRS objects to the legal argument of using "merely."

To the extent this Statement is not disputed, it is duplicative of at least SUMF Nos. 17-21.

**SAMF No. 61:**

The people responsible for the reinvestigations and for reviewing the records YRS received from BGC, are neither trained ████████████████████████████ (Ex. 1 Hennessey Dep. 71:15-25.)

**RESPONSE 61:**  Disputed in part.  Mr. Hennessey's testimony at 71:15-25 is limited to "public records analysts" at YRS in the context of the second-step of the two-step filtering process, i.e. the manual filtering.  The testimony does not address "people responsible for the reinvestigations and for reviewing the records YRS received from BGC."  (Ex. 1 at 70: 24- 72:3.)  Statements of facts where quotations are taken out of context and restrict the statement's veracity should be stricken.  *See Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08-CV-111, 2011 WL 1374980, at *3 (N.D. Ill. Apr. 12, 2011).

**SAMF No. 62:**

> YRS knows that criminal laws vary from state to state, but it does not t███████████ ███████████████████████████ (Ex. 1 Hennessey Dep. 85:13-15; 85:23-86:2.)

**RESPONSE 62:**  Disputed in part.  The testimony cited does not support the statement "YRS knows that criminal laws vary from state to state…"  Additionally, the question actually posed to Mr. Hennessey at the cited portion was "████████████████████████████████ ████████████████████████████"

**SAMF No. 63:**



> 63.    T████████████████████████████████ ███████████████████████████ ( Ex. 1 Hennessey Dep Vol.1 93:13-23.)

**RESPONSE 63:**  Undisputed.

**SAMF No. 64:**

> 64.    YRS has been familiar with deferred disposition for at least ten years.  (Ex. 1 Hennessey Dep 141:8-18.)  YRS is also aware that there are several different types of

dispositions which vary from state to state and even county by county. (Ex. 1 Hennessey Dep 91:1-11.) YRS keeps a list of dispositions for its public records analysts to refer to when they are unsure of a term used in a criminal record. (Ex. 1 Hennessey Dep 91:1-16. Ex. 2 Hennessey Dep 10:19-11:7; 11:10-17, 19:21-20:3.) No other sources of information used at YRS contain any other information on how to report a particular disposition. (Ex. 2 Hennessey Dep. 20:4-7.) To that end, Mr. Hennessey testified that YRS "█████████████████████████ ████████████████████████████████████████████████ (*Id.*) YRS knows deferred dispositions exist, but does not know which states offer deferred disposition. (Ex. 1 Hennessey Dep. 98:15-99:3). Mr. Hennessey could not even confirm that the individuals who are responsible for manually filtering criminal records to "assure maximum possible accuracy" are trained on how to detect deferred dispositions. (*Id.* at 98:4-7.)

**RESPONSE 64:** Disputed in part. First, Plaintiff violates LR 56.1(a), requiring statements of fact

to "consist of short numbered paragraphs." *Koszola v. Bd. Of Educ. Of Chi*., 385 F.3d 1104,

1109 (7th Cir. 2004) (explaining the Court is entitled to expect strict compliance with its local

rules regarding summary judgment); *Ezell v. Bass*, No. 09-Civ-6908, 2012 WL 379744, at *2

(N.D. Ill. Feb. 1, 2012) (explaining a court need not wade through excessive statements of fact to

determine which disputes are genuine including writing statements of fact that are lengthy and

compound).

Additionally, the statement ████████████████████████████████



████████████████████████. (Ex. 2 Hennessey Dep. 20:4-13.)

**SAMF No. 65:**

Mr. Hennessey also testified that YRS was not aware that Illinois had a deferred disposition statute. (Ex. 1 Hennessey Dep. 99:15-17.) Nor could he confirm if YRS's public records analysts were made aware that Illinois had a deferred disposition statute. (*Id.* at 100:2-6.)

**RESPONSE 65:** Disputed in part. This is misleading. In the testimony cited, Mr. Hennessey testified that he did not know *prior to this lawsuit* that Illinois had a deferred disposition statute and he was not sure if YRS public records analysts "know that Illinois has a deferred disposition statute." (Ex. 1 at 99:11-100:6.)

**SAMF No. 66:**

And when asked about whether deferred depositions are considered convictions at YRS, YRS responded that it would depend on what the criminal record showed. (Ex. 1 Hennessey Dep 106:18-23.) When looking at Plaintiff's criminal record, YRS was not aware that the final disposition of her criminal case showed the supervision was terminated and the charges discharged. (*Id.* at 107:14-20.) And most tellingly, Mr. Hennessey, the corporate representative testifying for YRS could not state what the company's position was in a situation, as here, where the final disposition was that the charges were discharged. (*Id.* at 107:25-108:6.)

**RESPONSE 66:** Disputed in part. YRS objects that the entire "testimony" cited here is a line of hypothetical and speculative questions that Mr. Hennessey could not answer definitively and is neither material nor relevant to the instant motion. Additionally, "the charges" were not "discharged"—the *sentence* was discharged. (*See* Ex. 19, Court Disposition.) This Statement is misleading and should be barred as lacking foundation under FRE 601, at minimum.

**SAMF No. 67:**

The exhaustive disposition list used at Yardi contains ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**RESPONSE 67:** Disputed in part.  First, the Disposition List, Exhibit 34, speaks for itself.  Mr. Hennessey further testified that it listed ██████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████

**SAMF No. 68:**

The  contract  between  BGC  and  YRS,  entered  into  on  October  23,  2006, ███████ ████████████████████████████ (Ex.  1 Hennessey Dep 156:4-12, see also Ex. 28.) BGC even disclaims any warranties of fitness of its database for FCRA purposes.  (Ex. 1 Hennessey Dep 157:16-19, Ex. 28.) In Article 4 of the Contract, in bold, capital letters ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████

**RESPONSE 68:** Disputed in part.  Plaintiff engages in legal argument here with the repeated use of the word "even."  Plaintiff also omits the testimony from Mr. Hennessey that such disclaimers are standard in the industry, not in any way particular to BGC.  (Ex. 1 at 145:18-146:1.)  This is misleading.

**SAMF No. 69:**

Most importantly, the Cook County court system demands a disclaimer be placed on the BGC report: "The Court does not warranty the accuracy, completeness, or currency of this data. This data is not and may not be represented as an official record of the Court or of the Clerk.

15

The official court record may be found in the hard copy files held and maintained by the Clerk. The Clerk provides no warranties, express or implied, that the information or data is accurate, complete or correct." (Ex. 11, Ex. 2 Hennessey Dep 42:9-19.)

**RESPONSE 69:** Disputed in part. YRS objects that Plaintiff engages in legal argument here with its characterization of "most importantly." *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"); *see also Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012) ("Opinion, suggested inferences, legal arguments, and conclusions are not the proper subject matter" of a statement of facts).

**SAMF No. 70:**

In January 2016, YRS performed ▇▇▇ criminal screenings for background checks. (Ex. 26). After the automatic filtering process suppresses c▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ record. *Id.* ▇5 disputes were initiated with YRS based on the results of the background check, and 201 of those disputes were successful, resulting in a modification of the criminal record. *Id.* That is an error rate of ▇▇▇ of applicants who initiated a dispute. In ▇▇ of those instances, the property changed its decision. There is no record or information on why there were no disputes on the other criminal records. (Ex. 1 Hennessey Dep 70:5-7.) And though YRS claims an accuracy rate of ▇▇▇ in deposition, YRS testified that that number does not reflect reports accurately reported, it is simply that no dispute was lodged. (Ex. 1 Hennessey Dep 70:8-13.)

**RESPONSE 70:** Undisputed, but objected to as duplicative and otherwise impermissible legal argument. First, this statement is duplicative of at least SUMF Nos. 11-13. Second, this is impermissible legal argument.

**SAMF No. 71:**

The TSR was the very last step in moving in to her new apartment. In fact, January 12, 2016 was her move-in date and she went to the management office to pick up the keys to move

her personal belongings in. (Ex. 3 Aldaco Dep. 150:24-151:3; 154:6-11.) The Reserve then requested a second background check and she was told that she would not be able to move into the property. (*Id.* at 153:22-24.) Plaintiff was told at that time that due to something on her background check she was not able to move in. (*Id.* at 154:17-22.) When pressed on what appeared on her report, the management personnel provided Plaintiff with the phone number to YRS so that she could speak with them directly. (*Id.* at 155:10-15.) Even Heather Corins, director of Fellowship Housing, contacted The Reserve to attempt to get her into the apartment after she was denied, and was told by the Reserve that there was nothing they could do and that "they wouldn't make an exception based on that report that was provided." (Ex. 4 Corins Dep. 51:8-19.) With that notation on her background check, she would not be able to move into the apartment complex. (*Id.* 54:7-13.)

**RESPONSE 71:** Disputed in part. First, YRS objects that this statement violates the Court's

requirements for short, concise statements of fact and should be stricken. LR 56.1; *Koszola v.*

*Bd. Of Educ. Of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (explaining the Court is entitled to

expect strict compliance with its local rules regarding summary judgment); *Ezell v. Bass*, No. 09-

Civ-6908, 2012 WL 379744, at *2 (N.D. Ill. Feb. 1, 2012) (explaining a court need not wade

through excessive statements of fact to determine which disputes are genuine including writing

statements of fact that are lengthy and compound). Second, this Statement mischaracterizes and

adds legal argument impermissibly. The Reserve did not request a "second background

check"—it simply followed its tenant application policies and procedures. There is no evidence

that The Reserve previously requested a background check on Ms. Aldaco. Instead, the

testimony shows that because Ms. Aldaco had not filled out an application and returned it to The

Reserve at the time she went to pick up the keys, The Reserve asked her to fill out the application

and then requested a "criminal only" background check through the YRS portal. The evidence

also shows, after Ms. Aldaco's report revealed she did not meet The Reserve's criteria based on

the 1996 ███████ conviction, The Reserve's property manager properly referred Plaintiff to YRS.

YRS also objects to purported statements by The Reserve, including Ms. Corins' quoted

testimony as hearsay, at minimum. FRE 801. YRS does not dispute that Plaintiff did not move

into The Reserve.

17

**SAMF No. 72:**

Plaintiff suffered economic damages for her loss of Fellowship Housing opportunities in the amount of  as follows: Renal Support ███, Utility Subsidies of ███, Debt Payment Matching of ███, Tax Refund Matching ███ Counseling Services and tutoring for her children $7,600 and various other incentives in an about of ███. (Ex. 38: Plaintiff's ███. (*Id.*)

**RESPONSE 72:** Disputed. YRS disputes that Plaintiff suffered any damages attributable to YRS in any way. YRS also disputes the amounts listed above, and notes that Plaintiff did not previously disclose a claim for "Renal Support," but "Rental Support."

Plaintiff also objects that this SAMF is not relevant to the issues raised in the instant motion for summary judgment.

**SAMF No. 73:**

Plaintiff suffered from emotional distress: she was considered homeless, which damaged her reputation (Ex. 3 Aldaco Dep. 269:16-17); causing her so much stress that she suffered from headaches and constant vomiting episodes (*Id.* at 276:21-277:25); she was short-tempered and angry (*Id.* at 278:21-23); she gained significant amount of weight (*Id.* at 278:24-279:3); she was also bedridden for days after the incident. (*Id.* at 279:4-11). Plaintiff's self-esteem suffered because she was branded a criminal *Id.* at 279:25-280:7. Plaintiff was also ashamed. *Id.* at 280:11-23.

**RESPONSE 73:** Disputed. YRS disputes that Plaintiff suffered any damages attributable to YRS in any way. YRS also disputes the self-serving testimony of Plaintiff as reflected above; Plaintiff has not shown any causation or connection between any of these alleged symptoms of emotional distress and YRS or its action.

Plaintiff also objects that this SAMF is not relevant to the issues raised in the instant motion for summary judgment.

**SAMF No. 74:**

This testimony was corroborated over and over again by the numerous witnesses YRS called to deposition: Clementine Frazier testified that Plaintiff changed after she could not move into the Fellowship Housing unit: she was disappointed, frustrated, angry and helpless (Ex. 41 Frazier Dep. 58:1-6), she would cry and was depressed (*Id.* at 58:14-24); she couldn't sleep and was not her normal self and suffered from headaches. (*Id.* at 59:23-60:7.)

**RESPONSE 74:** Disputed. First, it is unclear what "this testimony" refers to, and therefore it is

inadmissibly vague. Second, YRS disputes that Plaintiff suffered any damages attributable to

YRS in any way. YRS also disputes the self-serving testimony of Plaintiff as reflected above;

Plaintiff has not shown any causation or connection between any of these alleged symptoms of

emotional distress and YRS or its action. Third, while Plaintiff refers to "testimony corroborated

over and over again by the numerous witnesses YRS called to deposition," she only lists the

testimony of only one witness, Clementine Frazier. Ms. Frazier's testimony that Plaintiff's

distress symptoms were caused by the denial of her application by The Reserve are speculation.

Plaintiff also objects that this SAMF is not relevant to the issues raised in the instant

motion for summary judgment. In particular, Plaintiff's reference to "numerous witnesses YRS

called to deposition" is a blatant misstatement of the procedural history of this case, which, at

minimum, fails to disclose that Plaintiff listed no less than twelve (12) witnesses she intended to

call to trial, with vague descriptions of their anticipated testimony. YRS deposed only __ of the

disclosed witnesses and only two witnesses that were not listed as a trial witness for Plaintiff.

Those two witnesses were her current employer and her former employer, in January 2016, for

which ████████████████████████████████████.

**SAMF No. 75:**

Wilhemina Maldonado also corroborated her emotional distress: she suffered from migraines after her denial (Ex. 42 Maldonado Dep. 60:6-10); she broke down (*Id.* at 19:2-12); she was very emotional about the denial and was depressed and crying (*Id.* at 35:2-3), anxious and worrying (*Id.* at 36:16-20).

**RESPONSE 75:** Disputed. First, Ms. Maldonado is not a doctor. Second, Ms. Maldonado testified that Plaintiff's headaches, both before and after The Reserve's denial of her application for an apartment, sometimes "would be like" a migraine. (Ex. 42, 44:3-21.) Ms. Maldonado did not know the cause of the emotional distress (and did not corroborate all of Plaintiff's alleged symptoms) except by Plaintiff's statements, which are hearsay. To the extent she believed them caused by the denial of Plaintiff's application to The Reserve, they are speculation.

Additionally, this SAMF is not relevant to the issues raised in the instant motion for summary judgment.

**SAMF No. 76:**

Notably, the background check prepared through ▮▮▮▮▮ for Fellowship Housing on December 14, 2015 did not include this criminal record. (Ex. 37.) There can be no better evidence of YRS's failure to block obsolete information, then another background check company refusing to place the same information on Plaintiff's report. (See Ex. 37.)

**RESPONSE 76:** Disputed. Ex. 37, the ███████ background check document itself is impermissible hearsay, and it lacks foundation and authenticity. FRE 801, 901. No testimony or other evidence is cited otherwise. Moreover, any alleged information contained within the document also is hearsay. Additionally, Plaintiff's assertion that "another background check company refus[ed] to place the same information on Plaintiff's report" is wholly unsupported by the record and is pure speculation. FRE 602. The document itself does not state why Plaintiff's ███████ conviction was not included—which could simply be because ███████'s search did not locate it. Additionally, "There can be no better evidence" is clear legal argument. This entire paragraph is inadmissible.

Dated: July 6, 2017                                     Respectfully Submitted,

                                                        */s/ Patrick R. Duffey*

                                                        **Deanna R. Kunze**
                                                        dkunze@nixonpeabody.com
                                                        **Laura B. Bacon**
                                                        lbbacon@nixonpeabody.com
                                                        **Patrick R. Duffey**
                                                        pduffey@nixonpeabody.com
                                                        **NIXON PEABODY LLP**
                                                        70 West Madison, Suite 3500
                                                        Chicago, IL 60602
                                                        P: 312-977-4400
                                                        F: 844-872-9569

                                                        *Attorneys for Defendant RentGrow, Inc.*
                                                        *d/b/a Yardi Resident Screening*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed electronically on this 6th day of July, 2017, in compliance with the General Order on Electronic Case Filing, Section III(B)(1). As such, this document was served on all counsel who are deemed to have consented to electronic service.  Fed R. Civ. P. 5(b)(2)(E) and Local Rule 5.9.

*/s/ Patrick R. Duffey*
Patrick R. Duffey
