IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAFAELA ALDACO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16 CV 5754 |
| | ) |
| RENTGROW, INC. d/b/a YARDI RESIDENT SCREENING, | ) Judge Joan H. Lefkow |
| | ) |
| Defendant. | ) |

## ORDER

Rentgrow, Inc. d/b/a Yardi Resident Screening's motion for finding of bad faith under 15 U.S.C. §§ 1681n(c) and 1681o(b) and for expenses and fees under 28 U.S.C. § 1927 (dkt. 68) is denied. See statement.

## STATEMENT

**I. Background**

In 2015, Rafaela Aldaco applied for subsidized housing through the Fellowship Housing Corporation (FHC). FHC sought to place Aldaco in a rental unit in Hoffman Estates, and the building owner requested a background report from Yardi Resident Screening (YRS), a credit reporting agency. After YRS accurately reported that Aldaco had pleaded guilty to battery in 1996, the owner refused to rent to her. When Aldaco asked why she was denied housing, the owner gave her a phone number to contact YRS.

Aldaco and an FHC employee together called YRS to investigate. The FHC employee impersonated Aldaco on the call. When describing this call in discovery responses and in her deposition, however, Aldaco often stated that she made the call. In her deposition, she also used the pronoun "we" to describe who made the call. The YRS employee on the other end of the call directed Aldaco to file a form dispute letter over email.

Aldaco emailed YRS the form, claiming that the criminal record listed on her report did not belong to her, as the 1996 incident was a domestic dispute that ended with her boyfriend, not her, being convicted of battery. But YRS's investigation revealed that Aldaco had, in fact, pleaded guilty to battery, and she was sentenced to supervision that she successfully completed. YRS informed her that it would not change its report. Aldaco, still not believing that she had been convicted of a crime, went to the Cook County courthouse to obtain a certificate of disposition showing the details of her 1996 battery case. She then had the record expunged.

FHC put Aldaco in touch with plaintiff's counsel here, who concluded that although the criminal record was Aldaco's, it was not a "conviction" that could be reported. Under the Fair Credit Reporting Act (FCRA), criminal history older than seven years cannot be reported, except for convictions, which can be reported indeterminately. 15 U.S.C. §§ 1681c(a)(2), (5). Aldaco's counsel took the position that because Illinois law does not treat successful completion of court supervision as a "conviction," see 730 Ill. Comp. Stat. 5/5-6-3.1(f), neither does the FCRA, 15 U.S.C. § 1681 et seq.

Aldaco sued YRS, claiming that with this understanding of the word "conviction," YRS had either negligently or willfully violated the FCRA by not maintaining procedures to prevent improper reports and by failing to properly reinvestigate its report. She sought both statutory and actual damages, stemming from her loss of the housing opportunity in Hoffman Estates, loss of wages when she missed work after her housing fell through, and emotional damages. Aldaco disclosed nine witnesses who could corroborate her emotional damages. She testified at her deposition that she had sought medical care for some of the physiological effects of her emotional injuries but could not remember who gave her medical care. She never produced medical records and claimed in her written discovery responses that there were none.

This court granted summary judgment to YRS, holding that "conviction" under the FCRA does not incorporate state-law definitions and instead has freestanding meaning: "act or process of judicially finding someone guilty of a crime; the state of having been proved guilty" (Dkt. 66 at 4 (quoting *Conviction*, Black's Law Dictionary (10th ed. 2014)).) Because a court accepted Aldaco's guilty plea, thereby adjudging her guilty of a crime, her 1996 battery was a "conviction," and YRS did not violate the FCRA.[1]

YRS now moves for a finding that this action was filed in bad faith under 15 U.S.C. §§ 1681n(c) and 1681o(b), which would entitle it to attorneys' fees. (Dkt. 68.) YRS argues that Aldaco's discovery misconduct is proof of her bad faith but in footnotes to its motion and reply claims that discovery misconduct is also sanctionable under 28 U.S.C. § 1927. (*Id.* at 2 n.2.)

## II.   Analysis

### A.   15 U.S.C. §§ 1681n(c), 1681o(b)

Both 15 U.S.C. § 1681n(c) (for claims of willful FCRA violations) and § 1681o(b) (negligent violations) provide that on

> a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

"[B]ad faith . . . requires a showing either that the party subjectively acted in bad faith—knowing that [s]he had no viable claim—or that [s]he filed an action or paper that was frivolous, unreasonable, or without foundation." *Ryan* v. *Trans Union Corp.*, No. 99 C 216, 2001 WL

---

[1] Appeal of this court's judgment remains pending.

2

185182, at *5 (N.D. Ill. Feb, 26, 2001) (citing *Christianburg Garment Co.* v. *EEOC*, 434 U.S. 412, 421 (1978)). Bad faith is measured from the time of filing; plaintiffs have no obligation to withdraw filings that are later discovered to contain incorrect information. *Id.* at *6.

    The record reveals that Aldaco's claim that she had never been convicted of a crime was born of confusion, not bad faith. Aldaco was convicted of battery as a teenager in connection with a domestic dispute; she maintains that her then-boyfriend was the aggressor. His abuse led to several court proceedings, and it is no stretch to believe that, as a layperson, Aldaco could misunderstand or misremember the legal import of court proceedings twenty years past. (*See* dkt. 69-1 at 179:2–4 ("I remember taking him to jail because he hit me and me coming in to testify about that, but I never remember any conviction . . . .")); *cf. Ryan*, 2001 WL 185182, at *5 (giving "benefit of the doubt" that plaintiff acted in good faith when he made demonstrably inaccurate statement about his household finances). Of course, her attorneys knew better by the time the complaint was filed, but the complaint did not adopt Aldaco's incorrect belief that she had no 1996 battery charge; it instead took the reasonable but unsuccessful legal position that the disposition was not a "conviction" under the FCRA. *See Ryan*, 2001 WL 185182, at *6 ("Though the Court rejected this argument on the merits, it certainly was not legally frivolous.").

    YRS next argues that Aldaco frivolously claimed that the FCRA required YRS to investigate whether Aldaco was "convicted" because she disputed whether the criminal record belonged to her. The FCRA only requires reinvestigation of what the consumer disputes. *Westra* v. *Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Oses* v. *Corelogic Saferent, LLC*, 171 F. Supp. 3d 775, 782 (N.D. Ill. 2016). But *Westra* and *Oses* did not make Aldaco's claim frivolous. In *Westra*, only the name on the debt account was disputed, which could not have alerted the investigator to look for fraud. Here, on the other hand, the investigation into who was convicted would show whether there was a conviction; thus, by investigating what was disputed, YRS could have discovered the purported error alleged in the complaint. *Cf. Oses*, 171 F. Supp. 3d at 782 (credit reporting agency discovered and corrected error unrelated to dispute in its reinvestigation). *Oses*, which held that disputing that a criminal record belongs to the consumer does not require reinvestigation into any other aspect of the criminal record, was directly on point but not binding. *Gould* v. *Bowyer*, 11 F.3d 82, 84 (7th Cir. 1993) ("A district court decision binds no judge in any other case, save to the extent that doctrines of preclusion (not stare decisis) apply."). Though *Oses* strikes this court as well reasoned and correctly decided, it does not demonstrate that Aldaco's complaint was "frivolous, unreasonable, or without foundation," as opposed to unlikely to succeed. *Ryan*, 2001 WL 185182, at *5.

    Finally, YRS emphasizes that Aldaco did not have evidence of a willful violation when she filed her complaint or when she responded to the motion for summary judgment. Willfulness under the FCRA encompasses reckless misinterpretations of the statute's obligations, such that the defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am.* v. *Burr*, 551 U.S. 47, 69 (2007). Undoubtedly, because YRS's reading of the FCRA was correct, it was not reckless. But § 1681n(c) does not impose sanctions on every plaintiff who alleges a willful violation of the FCRA but does not ultimately persuade the court of her interpretation. *See Edwards* v. *Equifax Information Servs., LLC*, No. 1:17-cv-03096-RLM-MPB, 2018 WL 1748132, at *7–10 (S.D. Ind. Mar. 13, 2018) (finding no bad faith in willful FCRA violation claim based on debatable statutory interpretation). Aldaco combined the FCRA's prohibition on reporting old criminal

3

reports other than convictions and the Illinois law that Aldaco's sentence was not a conviction and alleged in good faith that YRS's contrary interpretation was reckless. Aldaco was wrong but not frivolous.

The motion for finding of bad faith under 15 U.S.C. §§ 1681n(c) and 1681o(b) is denied.

**B.     28 U.S.C. § 1927**

"An attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. YRS argues that Aldaco's counsel unreasonably and vexatiously multiplied proceedings through discovery misconduct. No conduct YRS describes merits sanctions under § 1927.

First, YRS argues that Aldaco's counsel disclosed too many potential witnesses to Aldaco's emotional distress after her housing application was rejected. Nine people observed Aldaco's distress, and Aldaco's counsel disclosed their names, as it should have done under the rules of discovery. There is nothing unreasonable or vexatious about that. Counsel's refusal to pare down the list was reasonable considering the Seventh Circuit's high bar for proving emotional damages. *See Wantz* v. *Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (establishing heightened standard for proving emotional damages in FCRA claims), *abrogated in other part by Safeco*, 551 U.S. at 56 n.8.

Second, YRS argues that counsel multiplied proceedings by not disclosing Aldaco's medical records. Aldaco's responses to interrogatories denied that she received any medical treatment for her emotional distress, though she later testified at her deposition that she received treatment. She was, however, unable to name her treatment providers or even the most basic information about them such as whether they were in the suburbs or the city. When YRS followed up with Aldaco's counsel to demand treatment information, Aldaco's counsel explained that they would not be seeking damages based on medical treatment. Because their client claimed but could not prove that she incurred medical bills, counsel reasonably chose to disclaim those damages. This choice minimized, not multiplied proceedings.

Third, YRS cites several mundane discovery disputes. Aldaco was late with her discovery responses and too insistent that YRS timely serve its own responses. Delays and discourteous lack of reciprocity are not commendable, but they are not vexatious. Aldaco's counsel demanded documents in .pdf form on the eve of a deposition, which is neither unreasonable or vexatious. Finally, Aldaco canceled a deposition because she had to work but then called in sick to work. To accept this as malicious, the court must assume that Aldaco took a sick day because she was truant, rather than because she was sick. The court will not so assume.

Fourth, YRS argues that Aldaco falsely claimed to have called YRS. Aldaco does not seem to dispute that an FHC employee was impersonating her on the phone with YRS.[2] That is

---

[2] YRS attaches an audio recording of the call with its motion, but the court cannot independently confirm the claim because it does not know either Aldaco or the FHC employee's voice. The court accepts YRS's representation and Aldaco's admission that an FHC employee impersonated Aldaco.

not automatically nefarious; FHC provides wide-ranging housing assistance, and from context, it appears that the FHC employee impersonated Aldaco to help her navigate the byzantine dispute process. The recording and Aldaco's discovery responses suggest that Aldaco was at least aware of the contents of the call and was likely listening in. She could thus earnestly say, for instance, that YRS told "her" to e-mail a form. Aldaco should, however, have made the nature of the call clear in her discovery responses. Although she sometimes suggested in her deposition that she and another person made the phone call (*e.g.*, dkt. 69-1 at 156:6 ("We called the number . . . .")), she repeatedly stated in written discovery that *she* called YRS. (*E.g.*, dkt. 69-3 ¶ 2 ("Plaintiff called Yardi . . . .").)

   The court does not condone Aldaco's lack of candor or her attorneys' failure to amend her discovery responses, but YRS argues primarily that discovery misconduct is evidence of bad faith and thus has not shown an unreasonable or vexatious multiplication of the proceedings. There is no evidence, for instance, that YRS had to take additional depositions or serve additional written discovery to learn about the contents of the phone call. Further, the call was not material to the dispute and did not feature in YRS's summary judgment motion. Aldaco appears to have been aware of the contents of the call, and YRS was likely going to depose both Aldaco and the FHC employee (who had critical information about Aldaco's damages) anyhow. As such, YRS has not proven that it is entitled to relief under § 1927.

Date: March 8, 2019

                                       U.S. District Judge Joan H. Lefkow